# 17-cv-06808-FPG

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. HAMPTON and BRENDA S. HAMPTON,
*Plaintiffs-Appellants*

v.

COUNTY OF ONTARIO, NEW YORK, and "JOHN DOE" and "JANE DOE", said names being fictitious, it being the intention of Plaintiffs to name any third-party purchaser of Plaintiffs' home at 4583 Lincoln Ave., Canandaigua, NY 14424 during the property tax foreclosure auction scheduled by Ontario County at 2914 County Road 48, Canandaigua, NY 14424 at 7 p.m., May 17, 2017
*Defendant(s)-Appellee(s)*

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK

BRIEF FOR PLAINTIFFS-APPELLANTS

Legal Assistance of Western New York, Inc.
*Attorneys for Plaintiffs-Appellants*
361 S. Main Street
Geneva, New York 14456
(315) 781-1465
ktalbott@lawny.org

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES …..…………………………………...………………………iii

STATEMENT OF JURISDICTION …..….………………………...…………………….......1

STATEMENT OF ISSUES AND STANDARD OF REVIEW ON APPEAL …..…………….....2
    A. Issues on Appeal …………………………………………………………...……...2
    B. Standard of Review ………………………………………………..………………...2

STATEMENT OF THE CASE …….………………………………………………………...3
    A. Nature of the Dispute …..………………………………………….………………...3
    B. Disposition Below …..……………………………………………………………4

STATEMENT OF FACTS ………………………………………………………………...4
    A. The Hamptons …..………………………………………………………………...4
    B. The Article 11 RPTL Tax Foreclosure…..………………………………………….6
    C. The Chapter 13 Proceeding …………………………...…………………………8
    D. The Adversary Proceeding …………………………………………………………9
    E. The Decision Below …..…………………………………………………………10
    F. Post-Decision Proceedings …..……………………………………….…………12

SUMMARY OF THE ARGUMENT …..............……………………………………………..13

ARGUMENT …………………………………………………………………………………15

I.  THE BANKRUPTCY COURT MISAPPLIED A U.S. SUPREME
COURT PRECEDENT WHEN FINDING THAT ONTARIO COUNTY
PRESUMPTIVELY GAVE "REASONABLY EQUIVALENT VALUE"
AS PART OF ARTICLE 11 TAX FORECLOSURES …..………………………….…………15

A.  Article 11 tax foreclosures lack a pre-seizure auction, a key
procedural safeguard identified in <u>BFP</u> as necessary for giving
"reasonably equivalent value" ………………………………………………………16

B.  There is no presumption of reasonably equivalent value where
there is no relationship between asset seized and value given………………………20

C.  There is no presumption of reasonably equivalent value when
Article 11 proceedings provide for the County, rather than the
Gunsaluses, to retain the surplus from an auction held after the
property has been foreclosed …………………………………………………………..23

Page

II.   USING <u>BFP</u>'s STANDARD FOR DETERMINING "REASONABLY
EQUIVALENT VALUE", ONTARIO COUNTY WAS NOT ENTITLED
TO A CONCLUSIVE PRESUMPTION OF "REASONABLY EQUIVALENT
VALUE" ……………..…………………………………………………………………26

III. THE BANKRUPTCY COURT'S RELIANCE ON DUE PROCESS
CASE LAW TO DETERMINE SUFFICIENCY OF A TRANSFER
UNDER 11 U.S.C. § 548 IS MISPLACED ……………..……………………………………28

IV. THE BANKRUPTCY COURT'S DECISION FAILS TO RECOGNIZE
THE STRONG BANKRUPTCY INTERESTS IN GRANTING
11 U.S.C. § 548 RELIEF TO THE GUNSALUSES ……………………………………………33

A.  Avoiding the transfer furthers the recognized bankruptcy interests of
    protecting exempt assets, ensuring debtors a fresh start, and enabling
    the success of reorganizations for the benefit of all creditors ………………………………33

B.  Avoidance proceedings will not unduly impair state interests or
    prejudice Ontario County ...……………………………………………………………………36

C.  The Bankruptcy Court erroneously elevates the state's interests above
    the Gunsaluses' right to avoidance under the bankruptcy code and fails
    to account for the impact on other creditors ...………………………………………………38

CONCLUSION ……………………………………………………………………………40

# **TABLE OF AUTHORITIES**

**CASES**                                                                                    Page

Barber v. Golden Seed Co.,
    129 F.3d 382 (7th Cir. 1997)……………………………………………………………20

BFP v. Resolution Trust Corp.
    511 U.S. 531   (1994) …………………………..2, 11, 12, 15, 16-20,  24, 26-28, 31, 33

Canandaigua Land Dev., LLC v. County of Ontario (In re Canandaigua),
    521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.), *and vacated*,
    2017 WL 2821874, 2017 Bankr. LEXIS 1840 (June 29, 2017)……………………..11, 12

In re Chase,
    No. 02-10582, WL 189711, 2005 (Bankr. D. Vt. Jan. 27, 2005)……………………34, 38

City of Milwaukee v. Gillespie ,
    487 B.R. 916 (E.D. Wis. 2013)………………………………………… 18, 19, 22, 33, 36

Clinton Cty. Treasurer v. Wolinsky,
    511 B.R. 34 (N.D.N.Y. 2014) ………………………………………………… 14, 18, 28, 39

Coleman through Bunn v. D.C.,
    70 F. Supp. 3d 58 (D.D.C. 2014) …………………………………………………………..31

County of Clinton v. Warehouse,
    496 B.R. 278 (N.D.N.Y. 2013) ...…………………………………………………..18, 20, 21

Emrich v. Touche Ross & Co.,
    846 F.2d 1190 (9th Cir. 1988) ...………………………………………………………….3

Forest Park Pictures v. Universal Television Network, Inc.,
    683 F.3d 424 (2d Cir. 2012)………………………………………………………………….3

In re GGI Properties, LLC,
    568 B.R. 231 (Bankr. D.N.J. 2017 …………………………………………………………18

Gunsalus v. Ontario Cty., New York/Hampton v. Ontario Cty., New York,
    576 B.R. 302 (Bankr. W.D.N.Y. 2017) ….………………10-12, 15-17, 29, 30, 32

 Matter of Hahn,
 5 B.R. 242 (Bankr. S.D. Iowa 1980) ……………………………………………………36

In re Herkimer Forest Prod. Corp.,
 No. 04-13978, 2005 WL 6237559 (Bankr. N.D.N.Y. 2005) …………………... 18, 27, 36

Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n,
 655 F.3d 136 (2d Cir. 2011) ……………………………………………………………3

In re Jacobson,
 523 B.R. 13 (Bankr. D. Conn. 2014) …………………………………………………25

Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.),
 29 F.3d 88 (2d Cir. 1994) ………………………………………………………………2

In re Martyak
 432 B.R. 25 (Bankr. N.D.N.Y. 2010) …………………………………………………18

Mary Jo C. v. New York State and Local Retirement System,
 707 F.3d 144 (2d Cir. 2013) ……………………………………………………………3

Miner v. Clinton Cty., N.Y.,
 541 F.3d 464 (2d Cir. 2008) cert. denied,
 556 U.S. 1128, 129 S. Ct. 1625, 173 L. Ed. 2d 996 (2009) ……………………………...31

In re Murphy,
 331 B.R. 107 (Bankr. S.D.N.Y. 2005) ………………………………… 17-19, 21, 24, 26, 30

Nelson v. City of New York,
 352 U.S. 103, 77 S. Ct. 195, 1 L. Ed. 2d 171 (1956) …………...……………………29-32

Salim v. VW Credit, Inc.,
 577 B.R. 615 (E.D.N.Y. 2017) ..…..……………………………………………………2

In re Sherman,
 223 B.R. 555 (B.A.P. 10th Circ. 1998) ...…………………………………………18, 32

In re Smith,
 811 F.3d 228 (7th Cir.), cert denied, 137 S.Ct. 103 (2016)...…14, 17, 18, 22, 28, 31, 34, 39

In re Tracht Gut, LLC,
     503 B.R. 804 (B.A.P. 9th Cir. 2014), aff'd, 836
     F.3d 1146 (9th Cir. 2016) …………………………………………………………….25

Matter of Varquez,
     502 B.R. 186 (Bankr. D.N.J. 2013) ……………………………………………... 18, 23

In re Wentworth,
     221 B.R. 316 (Bankr. D.Conn. 1998) ...…………………………………...22, 23, 27 37

**STATUTES AND REGULATIONS**

11 U.S.C. § 362…………………………………………………………... 33, 38

11 U.S.C. § 522(d)(1)……………………………………………………………….35

11 U.S.C. § 522(h) ……………………………………………………… 2, 9, 14, 35

11 U.S.C. § 548……………………………………………………...11, 14, 16, 29, 33, 34, 38

11 U.S.C. § 548(a) ………………………………………………………………….31

11 U.S.C. § 548(a)(l ) ……………………………………………………………….2, 14

11 U.S.C. § 548(a)(1)(B) …………………………………………………………….9

11 U.S.C. § 548(a)(1)(B)(i) …………………………………………………….....3, 14

11 U.S.C. §§1321-1330 …………………………………………………………….8

11 U.S.C. § 1325(a)(3) …………………………………………………………….8

11 U.S.C. § 1325(a)(5)(B)(i)(1) ………………………………………………….8, 33

11 U.S.C. § 1325(a)(6) …………………………………………………...……..8

11 U.S.C. § 1325(b)(1)(B) ……… …………………………………………………….8

11 U.S.C. § 1326 …………………………………………………...…………….8

28 U.S.C. § 157(a) ………………………………………………………………....1

28 U.S.C. §157(b)(1) …………………………………………………………….1

28 U.S.C. § 157(b)(2)(H)……………………………………………………………………1

28 U.S.C. § 158(a)(1) ………………………………………………………………...……1

28 U.S.C. §1334(b)……………………………………………………………………..1

 NY Real Property Tax Law Article 11………………………...2, 6, 11, 12, 15, 19, 21, 23-31, 39

NY Real Property Tax Law §1131……………...……………………………13, 25, 26, 28, 31

NY Real Property Tax Law §1136(2)…………………………………………..8, 13, 25, 26, 28

NY Real Property Tax Law §1136……………………………………………………………31

NY Real Property Tax Law §1136(3) ...………………………………………………………...8

NY Real Property Tax Law §1138(e) …………………………………………... 6, 40

NY Real Property Tax Law §1184 …………………………………………………..... 6, 40

New York Real Property Actions and Proceedings Law § 1361(3) ...……………………………..8

**FEDERAL RULES**

Rule 12(b)(6) Federal Rules of Civil Procedure...………………………………………...1, 3

Rule 7012(b) Federal Rule of Bankruptcy Procedure …………………………………………1

Rule 8002(a) Federal Rule of Bankruptcy Procedure ......…………………………………...1

Rule 8007 Federal Rule of Bankruptcy Procedure ...…………………………………………..13

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. I, Section 8, cl. 4. …………………………………………...……..31

**TREATISES/SECONDARY**

NCLC Consumer Bankruptcy Law and Practice, s 10.1.3 ...…………………………………..36

Scott B. Ehrlich, *Avoidance of Foreclosure Sales as*
*Fraudulent Conveyances: Accommodating State and Federal Objectives,*
    71 Va. L.Rev. 933, 935–36; 951-52 (1985)………………………………………....14

## STATEMENT OF JURISDICTION

This is an appeal from a November 6, 2017 Decision and Order (the "Decision") of the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"). The Decision, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, granted Defendant-Appellee Ontario County (the "Defendant-Appellee" or "Ontario County")'s motion to dismiss the Plaintiffs-Appellants ("the Hamptons")' adversary proceeding. The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(a)-(b)(1) and 1334(b). This was a core proceeding under 28 U.S.C. § 157(b)(2)(H). The County did not object to the Bankruptcy Court's jurisdiction under Federal Rule of Bankruptcy Procedure (FRBP) Rule 7012(b).

The Decision is a final judgment permanently dismissing the Hamptons' adversary proceeding and barring them from prosecuting their fraudulent conveyance action against Ontario County to avoid the loss of their home. The Decision was entered on or about November 6, 2017. Appendix (hereinafter "A.") at 82. Appellants Hamptons filed their notice of appeal with the Bankruptcy Clerk on November 17, 2017, pursuant to Rule 8002(a) FRBP. A. at 100. This Court has jurisdiction to hear this appeal under 28 U.S.C. §§ 158(a)(1).

## STATEMENT OF ISSUES AND STANDARD OF REVIEW ON APPEAL

A. Issues on Appeal

Whether the Bankruptcy Court misapplied the Supreme Court's holding in BFP v. Resolution Trust Corp., 511 U.S. 531 (1994) to Ontario County's New York Real Property Tax Law (RPTL) Article 11 tax foreclosures by finding that protections embedded in a pre-foreclosure bidding process are not an essential element in determining "reasonably equivalent value" under 11 U.S.C. §§ 522(h) and 548(a)(1), omitting a critical feature of the BFP analysis; and

Whether the Bankruptcy Court erred in granting Ontario County's motion to dismiss based upon a finding that Ontario County was entitled to a conclusive presumption of providing "reasonably equivalent value" under 11 U.S.C. §§ 522(h) and 548(a)(1), where Ontario County failed to provide a pre-seizure auction and retains any surplus from a post-seizure auction and there was no relationship between the value of the foreclosed lien and the value of the property foreclosed upon.

B. Standard of Review

The issues on appeal concern questions of law and, as a result, the standard of review for all issues on appeal is *de novo.* Appellate review of a final decision of the Bankruptcy Court is *de novo.* Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.), 29 F.3d 88, 92 (2d Cir. 1994); Salim v. VW Credit, Inc., 577 B.R. 615, 621

(E.D.N.Y. 2017). Moreover, *de novo* review applies to the decision of a lower court granting a Motion to Dismiss under FRCP 12(b)(6). <u>Mary Jo C. v. N.Y. State & Local Ret. Sys.</u>, 707 F.3d 144, 151 (2d Cir. 2013); <u>Forest Park Pictures v. Universal Television Network, Inc.</u>, 683 F.3d 424, 429 (2d Cir. 2012)(citing <u>Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n</u>, 655 F.3d 136, 141 (2d Cir. 2011)); <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1198 (9th Cir. 1988)("A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and as such, is reviewed *de novo*.")

## STATEMENT OF THE CASE

A. <u>Nature of the Dispute</u>

At issue in this case is the tax foreclosure by Ontario County of Joseph and Brenda Hampton's home for approximately $5,201.87 in tax arrears, and Ontario County's seizure of ownership and all accumulated equity. It also concerns the Hamptons' right to avoid this transfer as a constructively fraudulent conveyance which failed to give them "reasonably equivalent value" under 11 U.S.C. § 548(a)(1)(B)(i). At the time of the tax foreclosure judgment, the value of the Hamptons' home was assessed at $81,500; it later sold at auction for $27,000. This was far greater than the amount of the tax liens for which the property was seized.

After Ontario County obtained a judgment of tax foreclosure on their home, which entitled it to possession and all equity in the property, the Hamptons filed a

Chapter 13 bankruptcy and an Adversary Proceeding against Ontario County to avoid the transfer of their home as constructively fraudulent. The claim in the fraudulent conveyance action seeks to avoid the transfer of their home and pay off the tax arrears in full through their Chapter 13 plan.

Ontario County opposed the Hamptons' adversary proceeding, filing a motion to dismiss. The Bankruptcy Court granted Ontario County's motion to dismiss, reasoning that as a matter of law Ontario County was conclusively entitled to a presumption of "reasonably equivalent value" in tax foreclosure proceedings, and that accordingly, no claim for a fraudulent transfer was available to the Hamptons.

B. Disposition Below

The Bankruptcy Court granted Defendant-Appellee Ontario County's motion to dismiss the Hamptons' Adversary Proceeding Complaint in full with prejudice.

**STATEMENT OF FACTS**

A. The Hamptons

Mr. and Mrs. Hampton purchased their home located at 4583 Lincoln Avenue, Town of Gorham, Ontario County, New York, 14424 in 2010. A. at 9, ¶18, 20.  The Hamptons are a low-income household, and live at the home with their two minor children. A. at 9, ¶22-26. Mr. Hampton collects Social Security

4

Disability benefits. A. at 9, ¶23. He is legally blind, and cannot read or drive. A. at 9, ¶23. Mrs. Hampton cares for their children and her relatives who live nearby. A. at 10, ¶22, 28. In 2016, the tax assessment on the property was $81,500. A. at 9, ¶19. A private appraisal done in 2017 found that the home was worth $87,000. A. at 64. The home does not have a mortgage payment and has low maintenance costs. A. at 10, ¶27; A. at 13, ¶49.

The Hamptons gave up their vehicle four years ago when it died, as they could not afford to replace it. A. at 9, ¶21. The Hamptons have built their life around this home, which is their only significant asset of value. A. at 9, ¶21. They invested their life savings and Mr. Hampton's worker's compensation back award to purchase their home, which has never had a mortgage. A. at 9, ¶20. The location of their home allows Brenda Hampton to assist in caring for her elderly parents, who live nearby.  A. at 10, ¶28. She spends several days a week helping them to get their meals and ensuring that they take their medications. A. at 10, ¶28. Remaining in the home also ensures the stability of the the Hamptons' children's education. They have been enrolled in the Marcus Whitman Central School District since the Debtors moved to the subject property in 2010. A. at 10, ¶29.

Beginning in 2011, the Hamptons experienced a reduction in income when Brenda lost her job at Walmart because she could no longer meet the physical requirements of the position after a series of chronic health issues. A. at 9, ¶24.

Thereafter, her unemployment benefits ceased. A. at 10, ¶30. In 2015, the

Hamptons fell behind on their 2015 and 2016 property taxes, due January 1, 2015

and January 1, 2016. A. at 10, ¶30. Mrs. Hampton's income has stabilized since

then, and the Hamptons can afford the ongoing property tax payments to retain

their home. A. at 11, ¶30. The Hamptons resumed paying their taxes as soon as

they could and are current on all property and school taxes other than the

approximately $5,201.87 they owe for the 2015 and 2016 property taxes (and

which were the subject of the foreclosure proceeding).  A. at 11, ¶¶ 31, 33; A. at

12, ¶42.

### B. The Article 11 RPTL Tax Foreclosure

When prosecuting tax foreclosures, Ontario County is bound by New York

Real Property Tax Law Article 11 (hereafter "Article 11 RPTL" or "RPTL"). A. at

7, ¶12. A tax foreclosure under Article 11 RPTL is a strict forfeiture. In Ontario

County, once a homeowner has missed the deadline to redeem, the county obtains

a judgment of foreclosure which forecloses all ownership interest and equity of

redemption. A. at 7, ¶13. Article 11 RPTL allows municipalities or county

jurisdictions to adopt a voluntary protection for homeowners from losing their

homes by allowing them to apply for a repayment plan for property tax arrearages.

RPTL §§ 1138(e) and 1184. Ontario County has declined to adopt this voluntary

protection. A. at 8, ¶14. Ontario County has likewise not adopted any post-

redemption buy-back provisions or other procedures for permitting a homeowner to redeem after the deadline. A. at 8, ¶14. On October 3, 2016, Ontario County commenced the *in rem* tax foreclosure action, and served the Hamptons with notice that the deadline to redeem their home from foreclosure and serve an answer to the lawsuit was January 13, 2017. A. at 11, ¶31.

The Hamptons were unable to bring the taxes current by the January 13, 2017 deadline to redeem. A. at 11, ¶32. Ontario County does not allow partial payments, nor does it allow installment agreements for homeowners who are trying to catch up on payments. A. at 8, ¶14. A default judgment of tax foreclosure was entered in favor of the County on March 2, 2017. A. at 11, ¶34. The judgment authorized Ontario County to record a deed conveying to Ontario County full and complete title to Mr. and Mrs. Hampton's home and barred them from any right, title, interest, claim, lien or equity of redemption in their home. A. at 12, ¶40; RPTL § 1136(2)-(3). On April 4, 2017, the Hamptons obtained a parcel status report from the Ontario County Treasurer indicating that they owed $5,201.87 as of that date, three months after the deadline to redeem. A. at 12, ¶36.

Since their initial default, the Hamptons have made substantial efforts to meet their tax obligations. A. at 11, ¶33; A. at 12, ¶42. After Ontario County obtained a judgment of foreclosure, Ontario County nevertheless continued to bill the Hamptons for newly-accruing property taxes. A. at 12, ¶42. The Hamptons

have continued to pay all property taxes which accrued since entry on March 2,

2017 of the judgment of tax foreclosure, limiting the amount of the arrears. A. at

12 ¶42. The estimated total tax arrears for the 2015 and 2016 property taxes as of

April 4, 2017, three months after the deadline to redeem, were $5,201.87. A. at 12,

¶36, 38.

### C. The Chapter 13 Proceeding

On May 2, 2017, Mr. and Mrs. Hampton filed a Chapter 13 Plan providing

for payment of the entire tax arrears, using $5,201.87 as an estimate of arrears in

their plan. A. at 6, ¶2; A. at 12, ¶38. Chapter 13 proceedings are consumer

bankruptcy proceedings with a duration of three to five years. 11 U.S.C. §§ 1321-

1330. A Chapter 13 Plan proposes to pay arrears to secured creditors and to pay

disposable income to unsecured creditors. Id. The debtor makes payment to a

Chapter 13 trustee, who in turn, disburses funds to the creditors. 11 U.S.C. § 1326.

To qualify for a Chapter 13, the debtor must present a plan that is feasible (11

U.S.C. § 1325(a)(6)); that provides for payments to unsecured creditors of any

disposable income (11 U.S.C. § 1325(b)(1)(B)); and that is proposed in good faith

(11 U.S.C. § 1325(a)(3)). Under Chapter 13, the County retains its lien until the

County's secured claim for arrears is paid in full. 11 U.S.C. § 1325(a)(5)(B)(i)(1).

The Hamptons' Chapter 13 is a quintessential reorganization - their plan

proposes giving them five years to pay 100 percent of the debts they owe to all

creditors, including Ontario County. A. at 1. Under their Chapter 13 plan, the

Hamptons will pay 100 percent of the property tax arrears owed to Ontario County

and all on-going property tax payments, as well as 100 percent of the amount they

owe to their remaining creditors. A. at 13, ¶¶46-47, 50.

D. The Adversary Proceeding

On May 5, 2017, the Hamptons filed an Adversary Proceeding against

Ontario County, seeking to avoid the transfer of their home in tax foreclosure as

constructively fraudulent pursuant to 11 U.S.C.§ 548(a)(l)(B) and 11 U.S.C. §

522(h), and bring it into the estate as described in their Chapter 13 plan. A. at 5-17.

After the filing of the Adversary Proceeding on May 5, 2017, Ontario

County continued to list the Hamptons' home for sale in a county-wide tax

foreclosure auction, scheduled for May 17, 2017. See A. at 13, ¶44; A. at 18. On

May 15, 2017, the Hamptons filed a Motion for Temporary Restraining Order and

Preliminary Injunction (TRO), which was heard on an expedited basis and

ultimately settled by stipulated order of the parties. See A. at 18. On May 17, 2017,

the Bankruptcy Court granted the stipulated order, requiring Ontario County to

notify the bidders at the auction that title to the Hamptons' parcel was in dispute.

A. at 18-19. The order also restrained Ontario County from transferring title to a

third party as a result of the auction until a determination of the adversary

proceeding. A. at 19.

9

The auction proceeded pursuant to the stipulation, with bidders placed on notice that the property was subject to litigation. See A. at 78. The highest bidder bid $27,000 for the property. A. at 78, 80.

On July 31, 2017, Ontario County filed a Motion to Dismiss the Hamptons' Adversary Proceeding, A. at 28-59, which was opposed by the Hamptons. A. at 60-81. On November 6, 2017, the Bankruptcy Court issued a Decision and Order granting Ontario County's Motion to Dismiss the Hamptons' Adversary Proceeding. A. at 82-99. The Decision vacated the May 17, 2017 Stipulated Order which enjoined Ontario County from transferring the subject premises. A. at 99.

E. The Decision Below

On November 6, 2017, the Bankruptcy Court issued a decision granting Ontario County's Motion to Dismiss the adversary proceeding pursuant to FRCP 12(b)(6). A. at 82; Gunsalus v. Ontario Cty. New York/Hampton v. Ontario Cty, New York, 576 B.R. 302 (Bankr. W.D.N.Y. 2017)(hereafter "Hampton"). The Bankruptcy Court issued a single decision concerning both this case and another case against Ontario County with similar facts raising the same legal arguments; however, the cases were not joined or consolidated. Hampton, 576 B.R. at n. 1. The Court found that the Hamptons' complaint would survive a motion to dismiss on the first three elements of a fraudulent transfer claim under 11 U.S.C. § 548: an interest in the property, that the transfer took place within two years of filing of the

bankruptcy, and insolvency at the time of (or as a result of) the transfer. 576 B.R. at 307. The Court also found that the Hamptons' complaint would survive a motion to dismiss regarding all other defenses raised by Ontario County. Id.

As to the fourth element, the Bankruptcy Court held that because the foreclosure action was conducted in compliance with the notice requirements of Article 11 RPTL:

> [T]he Debtors cannot allege any set of facts that would tend to prove the absence of "reasonably equivalent value," a necessary element to a claim under 11 U.S.C. § 548(a)(1)(B)(i).

Hampton, 576 B.R. at 307.

The Bankruptcy Court accordingly held that Ontario County was entitled to an irrebuttable presumption of having provided "reasonably equivalent value", relying upon the rationale of BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), which concerned the determination of "reasonably equivalent value" in the context of *mortgage* foreclosures by sale conducted in accordance with state law. Hampton, 576 B.R. at 312-13.

The Bankruptcy Court had examined this issue previously in a Chapter 11 case from 2014, Canandaigua Land Dev., LLC v. County of Ontario (In re Canandaigua), 521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.), *and vacated*, 2017 WL 2821874, 2017 Bankr. LEXIS 1840 (June 29, 2017). In that case the Bankruptcy Court held that Ontario County was not entitled to a presumption of

reasonably equivalent value. In re Canandaigua, 521 B.R. at 476. The Bankruptcy

Court held that the Chapter 11 debtor in Canandaigua was able to avoid the

transfer, as Article 11 RPTL lacked the procedural safeguards contemplated by

BFP and its progeny, particularly "strict adherence to prescribed competitive

bidding rules and auction procedures." 521 B.R. at 476, 478.

In the present decision, the Bankruptcy Court reexamined the application of

BFP to Article 11 RPTL tax foreclosures and reconsidered its ruling in the 2014

Canandaigua case. The Bankruptcy Court stated that its decision in Canandaigua

contained a "flawed application of the principles identified by the Supreme Court

in BFP." Hampton, 576 B.R. at 304. The Bankruptcy Court concluded that the

Article 11 RPTL tax foreclosure process of notice, an ample opportunity to

redeem, and strict compliance with state statutes provided adequate protection to

the homeowner, and entitled Ontario County to an irrebuttable presumption of

"reasonably equivalent value" (notwithstanding the absence of the other factors

listed in BFP, including publication of a notice of sale, and strict adherence to

prescribed bidding rules and auction procedures). Id. at 309, 312-13.

## F. Post-Decision Proceedings

The Bankruptcy Court's ruling in this case was entered on November 6,

2017, which Plaintiffs-Appellants the Hamptons then appealed. A. at 82; A. at 100-

101. On November 15, 2017, the Hamptons filed a Motion for Stay Pending

Appeal. <u>See</u> A. at 102. On December 4, 2017, the parties entered into a Court-approved stipulation staying the November 6, 2017 Decision and Order and staying transfer of the property. A. at 102-103. The December 4, 2017 stipulated order of the Bankruptcy Court further suspended Chapter 13 confirmation proceedings pending appeal pursuant to Federal Rules of Bankruptcy Procedure Rule 8007. A. at 103. Under the terms of the stipulation, during the pendency of the appeal, Ontario County cannot transfer the property, and the Hamptons will continue to live in the home and make on-going property tax and bankruptcy payments pursuant to their Chapter 13 plan. A. at 103.

## SUMMARY OF THE ARGUMENT

The Hampton home was foreclosed on due to a tax lien of approximately $5,201.87. A. at 11, ¶31. Their home was assessed at $81,500 and appraised for $87,000. A. at 9, ¶19; A. at 64. Following the Ontario County tax foreclosure auction the high bid was $27,000. A. at 78, 80. Ontario County rather than the Hamptons is entitled to the entire surplus of approximately $21,798.13. RPTL §§ 1131 and 1136(2). The Hamptons filed an adversary proceeding to avoid this result and pay Ontario County through their Chapter 13 plan. A. at 5-17. Under the Bankruptcy Code, debtors can avoid pre-bankruptcy involuntary transfers of property under 11 U.S.C. § 548 when they are fraudulent or constructively fraudulent. 11 U.S.C. § 548(a)(1). "A central concern of federal bankruptcy law is

"[e]quality of distribution among creditors," which lies at the heart of fraudulent transfer law. " In re Smith, 811 F.3d 228, 238 (7th Cir. 2016), cert denied, 137 S.Ct. 103 (2016)(internal citations omitted)(noting "the broader purposes of the Bankruptcy Code and its fraudulent transfer provisions to ensure both a fair distribution of the debtor's assets among creditors and a fresh start for the debtor"); See also Scott B. Ehrlich, *Avoidance of Foreclosure Sales as Fraudulent Conveyances: Accommodating State and Federal Objectives,* 71 Va. L.Rev. 933, 935–36; 951-52 (1985) (noting, in foreclosure context, that § 548 helps to protect against "an estate-depleting windfall to the purchaser at the expense of the debtor's creditors").

Ontario County is subject to the lack of  "reasonably equivalent value" standard established by 11 U.S.C. § 548(a)(1)(B)(i) for allowing a bankruptcy trustee, or pursuant to 11 U.S.C. § 522(h), a debtor, to avoid transfers of property which occur before a bankruptcy case is filed. There is no exception in the Bankruptcy Code which applies to local taxing authorities. Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34, 38–39 (N.D.N.Y. 2014).

The Bankruptcy Court incorrectly held that, as a matter of law, Ontario County was entitled to a conclusive presumption of having provided "reasonably equivalent value" when it foreclosed on Mr. and Mrs. Hampton's home and gained all equity thereby, in order to satisfy a lien for approximately $5,201.87 in unpaid

property taxes. <u>Hampton v. Ontario Cty., New York</u>, 576 B.R. 302, 313 (Bankr. W.D.N.Y. 2017).

The Bankruptcy Court also erred when it granted Ontario County's motion to dismiss the Hamptons' complaint to avoid the transfer of their home to Ontario County as constructively fraudulent because: i) the Supreme Court precedent relied upon by the Bankruptcy Court requires more than the procedures offered under Article 11 RPTL tax proceedings; ii) the value of the tax lien was substantially less than the value Ontario County will receive from the post-seizure auction of the Hamptons' home; iii) Compliance with Article 11 RPTL tax procedures and due process is not a substitute for the provision of a pre-seizure auction; and iv) the Hamptons have protected federal bankruptcy interests which were overlooked by the Bankruptcy Court's decision.

## **ARGUMENT**

## I.   THE BANKRUPTCY COURT MISAPPLIED A U.S. SUPREME COURT PRECEDENT WHEN FINDING THAT ONTARIO COUNTY PRESUMPTIVELY GAVE "REASONABLY EQUIVALENT VALUE" AS PART OF ARTICLE 11 TAX FORECLOSURES

### A. Article 11 tax foreclosures lack a pre-seizure auction, a key procedural safeguard identified in <u>BFP</u> as necessary for giving "reasonably equivalent value"

In <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531 (1994), the Supreme Court held that regularly conducted mortgage foreclosure proceedings which result in

distressed property values at foreclosure auctions satisfy the "reasonably equivalent value" standard of 11 U.S.C. § 548 and shield foreclosing mortgage holders from fraudulent conveyance actions. BFP, 511 U.S. at 545. The Supreme Court based its ruling on the existence of an auction or sale which would permit some degree of market forces to set the value of the property, even in distressed circumstances. 511 U.S. at 545-6. BFP defined "reasonably equivalent value" in the mortgage foreclosure context as "the foreclosure sale price" obtained at auction. Id. at 545. It declined to find that the irrebuttable presumption of "reasonably equivalent value" extends to tax foreclosures.  Id. at 537 n. 3.

Analyzing BFP, the Bankruptcy Court reasoned that market forces are unnecessary to meet the "reasonably equivalent value" standard, so long as there is notice, a long redemption period, and the foreclosure process is judicially supervised.

> Instead, *BFP* recognized three essential and necessary key protections common to all state foreclosure statutes: (1) notice; (2) ample opportunity to cure; and (3) strict adherence to the requirements of those state statutes.
>
> Gunsalus v. Ontario Cty., New York/Hampton v. Ontario Cty., New York, 576 B.R. 302, 310 (Bankr. W.D.N.Y. 2017) (hereafter "Hampton").

However, the Bankruptcy Court omitted a critical fourth element of the BFP analysis: the requirement that state foreclosure proceedings provide for "strict adherence to prescribed bidding rules and auction proceedings." BFP, 511 U.S. at

542. While the Bankruptcy Court attempts to dismiss the omission of this

important protection by suggesting that the <u>BFP</u> court was simply referring to

procedures that are "typically required" and therefore not mandatory, a reading of

the complete opinion makes clear that a pre-seizure bidding process was an

essential element of the <u>BFP</u> holding. <u>Id</u>. The <u>BFP</u> court stated that only "[w]hen

these procedures have been followed," including the auction procedures, does the

inadequacy of the foreclosure sale price not provide grounds for setting aside a sale

under state foreclosure law. <u>Id</u>.. This analysis formed the basis for the Supreme

Court's holding in <u>BFP</u> that the phrase "reasonably equivalent value" should be

construed consistently with state foreclosure law.

Many courts interpreting <u>BFP</u>, including several district or bankruptcy

courts within the Second Circuit, have found that tax foreclosure proceedings fail

to provide "reasonably equivalent value" where they lack the operation of market

forces in determining value to the homeowner of the property. <u>In re Murphy</u>, 331

B.R. 107, 120 (Bankr. S.D.N.Y. 2005)("Where property is seized without a sale or

competitive bidding, there cannot be a presumption as a matter of law that

reasonably equivalent value was received because market forces were completely

absent."); <u>See also</u> <u>In re Smith</u>, 811 F.3d 228, 240 (7th Cir. 2016)("We must

enforce the federal bankruptcy remedy for fraudulent transfers where the reasoning

of *BFP* does not apply"). The Bankruptcy Court's decision to apply the <u>BFP</u>

presumption of "reasonably equivalent value" concerning conventional mortgage

foreclosures to tax foreclosures is contrary to the weight of the case law. These

cases include:  In re Smith, 811 F.3d 228 (7th Cir. 2016); In re Sherman, 223 B.R.

555 (B.A.P. 10th Cir. 1998);  Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34

(N.D.N.Y. 2014); Cty. of Clinton v. Warehouse at Van Buren St., Inc., 496 B.R.

278 (N.D.N.Y. 2013); City of Milwaukee v. Gillespie , 487 B.R. 916 (E.D. Wis.

2013) (hereafter "Gillespie"); In re GGI Properties, LLC, 568 B.R. 231 (Bankr.

D.N.J. 2017); Matter of Varquez, 502 B.R. 186 (Bankr. D.N.J. 2013); In re

Martyak, 432 B.R. 25 (Bankr. N.D.N.Y. 2010)(fraudulent transfer claim denied on

other grounds); In re Murphy, 331 B.R. 107 (Bankr. S.D.N.Y. 2005); In re

Herkimer Forest Prod. Corp., No. 04-13978, 2005 WL 6237559, (Bankr. N.D.N.Y.

2005).

     BFP held that a valid mortgage foreclosure sale presumptively provided

"reasonably equivalent value," because over the years states have developed

protections for mortgagors, including "foreclosure by sale (with the surplus over

the debt refunded to the debtor) as a means of avoiding the draconian

consequences of strict foreclosure." BFP, 511 U.S. at 541. BFP also noted other

protections, including "notice to the defaulting borrower, a substantial lead time

before the commencement of foreclosure proceedings, publication of a notice of

sale, and strict adherence to prescribed bidding rules and auction procedures." <u>Id</u>. at 542.

By contrast, New York's tax foreclosure scheme, which does not return to the homeowner the proceeds of the sale and allows a property to be forfeited due to a tax debt many times smaller than the value at auction, is like the type of strict foreclosure which <u>BFP</u> noted rarely occurs in the mortgage context. To the extent there is competitive bidding in a tax foreclosure sale under Article 11 RPTL, it does not serve to benefit the homeowner as it would in the mortgage foreclosure context because the debtor does not receive the surplus proceeds, and the auction takes place after a homeowner's forfeiture of any interest in the property. <u>Murphy</u>, 331 B.R. at 120; <u>see also</u> <u>Gillespie</u>, 487 B.R. at 920.

Many of the justifications that <u>BFP</u> gave for reaching its holding in the mortgage foreclosure context do not exist in New York's tax foreclosure scheme under Article 11 RPTL. The three factors referred to by the Bankruptcy Court are not a substitute for market forces because they omit the protection afforded by an auction procedure. <u>BFP</u> requires that foreclosing entities provide "strict adherence to prescribed bidding rules and auction proceedings" where market forces can establish the value of a property. <u>BFP</u>, 511 U.S. at 542. Ontario County failed to do this, and the Bankruptcy Court failed to properly analyze this element of <u>BFP</u> when it granted Ontario County's motion to dismiss.

**B. There is no presumption of reasonably equivalent value where there is no relationship between asset seized and value given**

There is no relationship between the value of the homes that Ontario County seizes and the tax liens that it seizes them for in tax foreclosures conducted under Article 11 RPTL. See Cty. of Clinton v. Warehouse at Van Buren St., Inc., 496 B.R. 278, 283 (N.D.N.Y. 2013)(hereafter "Van Buren"). The Bankruptcy Court's ruling is contrary to the decisions of other federal courts in in New York which have held that Article 11 RPTL fails to provide "reasonably equivalent value" to property owners in tax foreclosure. These courts have found that the lack of relationship between the value of the property and the tax lien is decisive and that the avoidance remedy under bankruptcy law applies, if other eligibility requirements are met. See, e.g., Van Buren, 496 B.R. at 282.

A determination of "reasonably equivalent value" for purposes of avoiding a transfer under Section 548 of the Bankruptcy Code is made by comparing the value of what was transferred to what was received.  Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir. 1997). In the context of a mortgage foreclosure, this bankruptcy standard is met by providing the property owner with the price that actually was (or would have been) received at a regularly-conducted foreclosure sale. BFP, 511 U.S. at 545-46. The Supreme Court reasoned that distressed property is worth less than fair market value and that an auction provides for the operation of market forces to determine value under those altered circumstances.

511 U.S. at 547-49. In a strict foreclosure like a tax sale under Article 11 RPTL, however, this analysis quickly crumbles.

This point was made in a Northern District of New York decision that granted avoidance relief with respect to Article 11 RPTL proceedings:

> As the *Herkimer, Balaber–Strauss,* and *Harris* courts reasoned, "the 'amount of a tax lien is no evidence whatsoever of the property's value' and, thus, there [can] be no presumption that the debtor received reasonably equivalent value" as in the *BFP* mortgage foreclosure scenario.

Van Buren, 496 B.R. at 283.

A similar point was made in a Southern District of New York decision, which held that even allowing for New York's strong interest in enforcing tax collection:

> Where property is seized without a sale or competitive bidding, there cannot be a presumption as a matter of law that reasonably equivalent value was received because market forces were completely absent. Unlike in a mortgage foreclosure under New York law, where the market is redefined, the market is completely destroyed by New York tax forfeiture proceedings.

In re Murphy, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005).

The Bankruptcy Court's decision is also contrary to the weight of the case law outside of New York State. Recently, the Seventh Circuit Court of Appeals issued a comprehensive decision which upheld a homeowner's avoidance proceeding in a case in which the homeowner lost title in the Illinois tax foreclosure process.  In re Smith, 811 F.3d 228, 234 (7th Cir. 2016). The Illinois

tax foreclosure process involved sale of tax liens to private parties, which could ultimately result in the homeowner forfeiting title without any reimbursement for lost equity.  Id. at 237. The court, in finding that the Illinois tax authority was not entitled to an irrebuttable presumption of "reasonably equivalent value", stated: "[In] an Illinois tax sale, there is 'no correlation between the sale price and the value of the property.'" Id. at 238.

In the same manner, a district court in Wisconsin, after a careful analysis of the bankruptcy court's opinion below, concluded that the taxing authority was not entitled to a conclusive presumption of reasonably equivalent value without a public sale offering. City of Milwaukee v. Gillespie, 487 B.R. 916, 920 (E.D. Wis. 2013)(hereafter "Gillespie").

Likewise, a bankruptcy court within the Second Circuit, the Bankruptcy Court for the District of Connecticut, upheld an avoidance proceeding after loss of title in a property tax foreclosure context.  The court noted that the State's:

> forfeiture procedure eliminates rather than redefines the market. While the forced sale price may be legitimate evidence of the property's value, the amount of a tax lien is *no* evidence whatsoever of the property's value.

In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998).

Similarly, a bankruptcy court in New Jersey upheld an avoidance proceeding after finding:

> Under the New Jersey Tax Sale Law, at the point of the entry of a judgment of foreclosure, there is no sale, forced or otherwise. There is simply the foreclosure of the debtor's equity of redemption, and the transfer of a fee simple interest in the property to the tax sale certificate holder.

Matter of Varquez, 502 B.R. 186, 192 (Bankr. D.N.J. 2013).

Article 11 RPTL, like the New Jersey statute at issue in Matter of Varquez, is a strict foreclosure tax regime that lacks the return to the property owner of any surplus or a pre-seizure auction. There is no relationship between the value of the property seized by a county and the value received in return by debtors. Matter of Varquez, 502 B.R. at 193. The features of Article 11 RPTL, like Connecticut's statute, "eliminate[] rather than redefine[] the market." In re Wentworth, 221 B.R. at 320. The Hamptons, accordingly, lost their home and all accumulated equity over just $5,201.87 in tax arrears, despite a post-seizure auction establishing that the home is worth many times more than that. This disparity between the value of the property and the value of the tax lien should have precluded Ontario County from an irrebuttable presumption of "reasonably equivalent value", and the Bankruptcy Court erred in holding otherwise.

**C. There is no presumption of reasonably equivalent value when Article 11 proceedings provide for the County, rather than the Hamptons, to retain the surplus from an auction held after the property has been foreclosed**

Many courts interpreting BFP have also focused on whether the state procedures provide a way for debtors to recover equity. In mortgage foreclosures by sale there is an auction before seizure, and the mortgagor can recover a surplus after the mortgage debt is paid in full. New York Real Property Actions and Proceedings Law (NY RPAPL) § 1361(3); BFP, 511 U.S. at 541. In Article 11 RPTL tax foreclosures, however, the property is forfeited before any auction occurs. Murphy, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005)("[Article 11 RPTL] does not require a sale whatsoever, unlike New York mortgage foreclosure proceedings. If an owner does not redeem or answer in the tax forfeiture proceeding, the taxing authority gets title to the property in fee simple.") Accordingly, market forces have no impact on the value received by the debtor and, in fact, the debtor receives no value at all with the complete forfeiture under the Article 11 RPTL regime. Id. at 120 ("Unlike in a mortgage foreclosure under New York law, where the market is redefined, the market is completely destroyed by New York tax forfeiture proceedings.")

Bankruptcy cases from other jurisdictions which have denied debtors' avoidance claims against taxing jurisdictions have typically pointed to an opportunity to redeem surplus proceeds. These courts often identify return of equity to debtors as a key element which renders certain tax foreclosure systems more akin to mortgage foreclosures. For instance, the Ninth Circuit Court of

Appeals noted that the California tax foreclosure process permits the homeowner to file a claim against the proceeds of the auction if in excess of the liens and costs. In re Tracht Gut, LLC, 503 B.R. 804, 818 (B.A.P. 9th Cir. 2014), aff'd, 836 F.3d 1146 (9th Cir. 2016). Similarly, a bankruptcy court within the Second Circuit, the Bankruptcy Court for the District of Connecticut, rejected an avoidance proceeding involving a tax foreclosure, noting the proceeds of the auction had been deposited in a fund against which the owner and the lien holders could make a claim:

> Thereafter, the Town was paid the entirety of its unpaid taxes and the balance of the funds, after said taxes, fees and charges in the amount of $64,440.79 was deposited with the Tolland Superior Court pursuant to Conn. Gen. Stat. § 12–157(i)(1)(B), subject to claim by owners and/or encumbrancers.

In re Jacobson, 523 B.R. 13, 16 (Bankr. D. Conn. 2014).

By contrast to the cases above, tax foreclosure proceedings under Article 11 RPTL are absolute in depriving the homeowner of any recovery of equity once the redemption period expires. RPTL §§ 1131 and 1136(2). When Ontario County takes title to a home under Article 11 RPTL, the only value given to homeowners is satisfaction of their tax debts. Moreover, because property tax debts are an *in rem* rather than an *in personam* obligation, the Hamptons receive no benefit once their interest in the property is foreclosed. The forfeiture of the homeowner's interest in the property occurs before any auction, and any market forces that bear at the post-forfeiture auction have no impact whatsoever on the value given to a

25

homeowner. <u>Murphy</u>, 331 B.R. at 120. Unlike a mortgage foreclosure, any surplus from the post-forfeiture auction is retained by Ontario County and not given to the homeowner. RPTL §§ 1131 and 1136(2).

Mr. and Mrs. Hampton and their minor children, a low income family, live in a small town in Ontario County. A. at 8, ¶18, 20-26. They obtained a private appraisal of their home at $87,000. A. at 64-76. The County foreclosed on the Hamptons' home for back taxes of approximately $5,201.87, when they were unable to pay this amount during the redemption period. A. at 11, ¶31-32. At the auction which followed the County's judgment of foreclosure, the high bid was $27,000. A. at 78, 80. Under Article 11 RPTL, the Hamptons have no right to the surplus of approximately $21,798.13. RPTL §§ 1131 and 1136(2). Instead this surplus is a windfall for the County.

## II. USING <u>BFP</u>'s STANDARD FOR DETERMINING "REASONABLY EQUIVALENT VALUE", ONTARIO COUNTY WAS NOT ENTITLED TO A CONCLUSIVE PRESUMPTION OF "REASONABLY EQUIVALENT VALUE"

Ontario County's foreclosure of the Hamptons' home was a constructively fraudulent transfer under <u>BFP</u>'s formulation of "reasonably equivalent value", as Article 11 RPTL's procedures did not give the Hamptons "the foreclosure-sale price itself" of $27,000 in exchange for seizure of their home. <u>BFP,</u> 511 U.S. at 547. <u>BFP</u> accepted the premise that mortgage foreclosure sales must meet a

"reasonably equivalent value" standard or be subject (assuming other bankruptcy requirements are met) to avoidance proceedings. BFP noted that the phrase "reasonably equivalent" does not have a statutory definition. 511 U.S. at 536. In formulating a standard, BFP framed the question as "What is a foreclosed property worth?" Id. at 547. It summarized its conclusion as follows: "We have considered three … possible answers to this question—fair market value, reasonable forced-sale price and the foreclosure-sale price itself—and have settled on the last." Id. at 547 (internal citations omitted). The BFP decision concludes, "[T]the only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself. Id. at 549.

By this formulation, the value of the Hampton home was $27,000, the high bid at the foreclosure auction.[1]  A. at 78, 80. However, the amount of back taxes which would be satisfied by the forfeiture of the home was approximately

---

[1] Because a forced auction occurred in this case, it allows this Court the benefit of knowing what the property is worth under distressed conditions. Applying the BFP rule, the "reasonably equivalent value" is no less than the forced sale price. The Court need not decide in this case the "reasonably equivalent value" of a foreclosed property in situations where no auction has yet occurred. In such situations some courts have made comparisons between the property's market value and the amount of the tax debt. See In re Herkimer Forest Prod. Corp., No. 04-13978, 2005 WL 6237559, at *4 (Bankr. N.D.N.Y. 2005) ("The value of the Properties is approximately 11 times the debt. Clearly, the value of the Properties is not proportional to the Debtor's tax debt, and the transfer is voidable as fraudulent under Code § 548."). See also In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998) ("The court concludes that the transfer of a debtor's real property with a market value of $20,700 for a tax lien of $1,515.63, pursuant to the forfeiture procedure, is not for reasonably equivalent value."). These cases demonstrate that a Court need not know what the property would fetch at a forced sale in order to avoid a demonstrably one-sided transaction. The Hamptons are on even stronger ground than those in Herkimer and Wentworth because this Court has the benefit of seeing the results of a forced sale, which made it all the more apparent that "reasonably equivalent value" was not provided.

$5,200.00. A. at 11, ¶31. By <u>BFP</u>'s own terms, the foreclosure sale price of

$27,000 is the relevant figure, all of which is retained by the County rather than

returned to the Hamptons under Article 11 RPTL. RPTL §§ 1131 and 1136(2); <u>See</u>

<u>BFP</u>, 511 U.S. at 545 ("We deem, as the law has always deemed, that a fair and

proper price, or a 'reasonably equivalent value,' for foreclosed property, is the

price in fact received at the foreclosure sale….").

 Because there is no pre-seizure auction, and the County receives the full

benefit of any surplus from the post-seizure auction, the Hamptons did not receive

"reasonably equivalent value" under <u>BFP</u> for the loss of their home. Ontario

County is required to give "reasonably equivalent value" to the Hamptons, or be

subject to avoidance proceedings under 11 U.S.C. § 548. <u>In re Smith</u>, 811 F.3d

228, 240 (7th Cir. 2016); <u>Clinton Cty. Treasurer v. Wolinsky</u>, 511 B.R. 34, 38–39

(N.D.N.Y. 2014). It failed to do so, and the Bankruptcy Court ignored this in

granting Ontario County a conclusive presumption of having provided "reasonably

equivalent value".

## III. THE BANKRUPTCY COURT'S RELIANCE ON DUE PROCESS CASE LAW TO DETERMINE SUFFICIENCY OF A TRANSFER UNDER 11 U.S.C. § 548 IS MISPLACED

 Strict adherence with Article 11 RPTL tax foreclosure procedures is

insufficient to compensate for the lack of market forces in New York's tax

foreclosure system, and will not prevent constructively fraudulent transfers of property from homeowners to taxing jurisdictions like Ontario County. Avoidance proceedings under 11 U.S.C. § 548 are a statutory remedy available to homeowners faced with this situation. The Bankruptcy Court erred in relying on non-bankruptcy cases concerning due process challenges, rather than compliance with 11 U.S.C. § 548 requirements, to deny this federal bankruptcy remedy to Mr. and Mrs. Hampton.

The Bankruptcy Court erroneously relied on a non-bankruptcy case for the proposition that state court procedures of notice and an extended redemption period will compensate for the lack of a pre-seizure auction with competitive bidding in the tax foreclosure process. Gunsalus v. Ontario Cty., New York/Hampton v. Ontario Cty., New York, 576 B.R. 302, 310 (Bankr. W.D.N.Y. 2017)(hereafter "Hampton")(citing Nelson v. City of New York, 352 U.S. 103 (1956)). However, New York state court procedures are limited, and unable to provide relief for the financial hardships which are contemplated by bankruptcy law remedies. Mr. and Mrs. Hampton, who experienced a temporary decline in their very limited income, were unable to obtain the necessary funds to pay off the back taxes before the redemption period expired. A. at 10, ¶30-32.

The Hamptons did not file an answer to the *in rem* proceeding. However, the judicial oversight provided by the state tax foreclosure statute would have provided

little protection in any event, as it is limited to technical requirements of the foreclosure. Murphy, 331 B.R. 107, 126 (Bankr. S.D.N.Y. 2005). Moreover, under Article 11 RPTL, inadequacy of price is not a basis for setting aside a tax foreclosure judgment, and there is no procedure for requesting the return of any surplus. 331 B.R. at 127.

The Bankruptcy Court's reliance on Nelson was misplaced. See Hampton, 576 B.R. at 310, citing Nelson, 352 U.S. 103 (1956)). Nelson involved a broad constitutional attack on the tax foreclosure process. The appellants in that case claimed that the disparity in the fair market value of their property and the tax lien which resulted in a foreclosure raised due process and other Constitutional issues. Accordingly, the Nelson court was tasked with evaluating whether the appellants had received due process and just compensation under the Constitution. By contrast, at issue for the Hamptons is the scope of a specific statutory remedy enacted by Congress as part of the Bankruptcy Code pursuant to its powers under U.S. Const. Art. I, Section 8, cl. 4. cf. BFP, 511 U.S. at 567, (Souter, J., dissenting). An avoidance proceeding such as that at issue in this case is a statutorily-enacted tool in support of comprehensive bankruptcy relief for debtors. In re Smith, 811 F.3d 228, 238 (7th Cir. 2016)(noting "the broader purposes of the Bankruptcy Code and its fraudulent transfer provisions to ensure both a fair distribution of the debtor's assets among creditors and a fresh start for the debtor").

This remedy is based on the statutory bankruptcy standard of "reasonably equivalent value". 11 U.S.C. § 548(a). The legal theories for recovery claimed by the Nelson appellants are entirely distinct, and inapplicable to the present case. Nelson, 352 U.S. at 104.

Nelson is also factually distinguishable in a significant fashion.  The homeowners in that case had the opportunity to apply for a separate sale in which they could seek recovery of the surplus.  The Nelson court stated,  "[W]e do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." 352 U.S. at 110. By contrast, Article 11 RPTL has no provision for a homeowner to seek the surplus from the auction. The loss of the homeowner's equity is absolute. RPTL §§ 1131 and 1136.

This limitation on Nelson was noted in a subsequent decision challenging tax foreclosure proceedings in the District of Columbia:  "Nelson makes clear that a Takings Clause violation regarding the retention of equity will not arise when a tax-sale statute provides an avenue for recovery of the surplus equity." Coleman through Bunn v. D.C., 70 F. Supp. 3d 58, 80 (D.D.C. 2014).

The Bankruptcy Court also cites a decision from the Second Circuit Court of Appeals which rejects a constitutional challenge to Article 11 RPTL proceedings, even without a remedy for recovery of the surplus. Hampton, 576 B.R. at 311 (citing Miner v. Clinton Cty., N.Y., 541 F.3d 464, 475 (2d Cir. 2008) cert. denied.,

556 U.S. 1128 (2009)). In that case, the Second Circuit Court of Appeals stated:

"The retention of any surplus from a tax auction is constitutional because there was

no violation of plaintiffs' right to due process related to the notices of foreclosure."

Miner, 541 F.3d at 475. However, the Miner decision was based almost entirely on

due process grounds. 541 F.3d at 466-67. It does not apply to the specific

bankruptcy remedy of avoidance proceedings, which in a bankruptcy context

provides basic protection for homeowners and serves compelling bankruptcy

interests.

   While strict adherence to state court procedures might satisfy the

constitutional requirements of due process, unlike the plaintiffs in Nelson and

Miner, the Hamptons are not raising a due process challenge to the tax foreclosure.

They are instead asserting their right under bankruptcy law to avoid the transfer as

a fraudulent conveyance, and in order to shield itself from this right, the County

must satisfy a different burden. It must show that it has given "reasonably

equivalent value" under 11. U.S.C. § 548, and for this, strict adherence to state

court procedures is not sufficient. Gillespie, 487 B.R. at 920 ("The court is not

persuaded that "reasonably equivalent value" was received as a matter of law

simply because the City complied with the foreclosure statute"); See also In re

Sherman, 223 B.R. 555, 559 (B.A.P. 10th Cir. 1998)(rejecting the argument that

BFP stands for the proposition that as long as a tax foreclosure and sale are

conducted in accordance with the law that reasonably equivalent value was

obtained). The Bankruptcy Court's reliance on cases concerning due process

challenges is misplaced.

## IV. THE BANKRUPTCY COURT'S DECISION FAILS TO RECOGNIZE THE STRONG BANKRUPTCY INTERESTS IN GRANTING 11 U.S.C. § 548 RELIEF TO THE HAMPTONS

### A. Avoiding the transfer furthers the recognized bankruptcy interests of protecting exempt assets, ensuring debtors a fresh start, and enabling the success of reorganizations for the benefit of all creditors

Recovery by Mr. and Mrs. Hampton of title to their home is essential for the

success of their Chapter 13 Plan. If allowed to stand, the Bankruptcy Court's

decision would render this family of low-income homeowners homeless and

destroy the prospects that they can repay their creditors—not just Ontario

County—in their Chapter 13 bankruptcy. As there is no monthly mortgage

payment, the Hamptons' housing costs are minimal, allowing them to make

payment to their unsecured creditors from their modest income. A. at 9, ¶20; A. at

13, ¶50. The Chapter 13 Plan would repay the County, in full, for the back taxes,

maintain payment of newly issued property taxes as they become due, and fully

pay off their unsecured creditors with their disposable income. A. at 13, ¶50. The

County's tax lien would remain intact throughout the Chapter 13 Plan. 11 U.S.C. §

1325(a)(5)(B)(i)(1). The County retains the right to move for dismissal if not paid

according to the Plan. 11 U.S.C. § 362.

The Bankruptcy Code was designed in large part to ensure a fair distribution among creditors and a fresh start for the debtor. In re Smith, 811 F.3d 228, 239 (7th Cir. 2016); In re Chase, No. 02-10582, 2005 WL 189711, at *7 (Bankr. D. Vt. 2005)("[T]his Court must examine the applicability of the fraudulent conveyance statute against the debtor's right to a fresh start and each creditor's right to equal treatment. These principles constitute the bedrock underlying the bankruptcy system."). Mr. and Mrs. Hampton have a strong bankruptcy interest in being granted 11 U.S.C. § 548 relief in order to accomplish their Chapter 13 plan, protect their homestead exemption and benefit their creditors. Their Chapter 13 plan includes payment of 100 percent of the property tax arrears owed to Ontario County and 100 percent payment of the debts owed to their unsecured creditors. A. at 6, ¶2.

Protection of assets critical to a reorganization is also a key bankruptcy interest at stake in this case. Mr. and Mrs. Hampton are a low-income household who invested their life savings into the property, and whose family relies on its proximity. A. at 7, ¶9, 28. The home has a tax assessment of $81,500 and a private appraisal of $87,000. A. at 6, ¶1; A. at 64. The home does not have a mortgage payment and has low maintenance costs. A. at 10, ¶27; A. at 13, ¶49. Avoiding the transfer would allow the Hamptons to keep their only sizeable asset, while paying Ontario County back in full. Moreover, due to the low housing costs, it would also

ensure that they have adequate disposable income in their budget to repay their other creditors through the Chapter 13 plan. Under their Chapter 13, their unsecured creditors - along with Ontario County - are being fully repaid. If the transfer is not avoided, Ontario County seizes the entire benefit of the these insolvent debtors' asset to the detriment of them and their other creditors.

By contrast, retention of their home invokes the important bankruptcy interest of granting them a fresh start and preserving their homestead exemption, pursuant to 11 U.S.C. § 522(d)(1). The Bankruptcy Code recognizes the importance of exemptions by permitting debtors, such as Mr. and Mrs. Hampton, to file an avoidance proceeding action under Section 548, even if the Chapter 13 trustee declines to do so, if the object is recovery of an exempt asset. 11 U.S.C. § 522(h). Due to the Hamptons' limited income, retention of their home is essential for the success of their Chapter 13 reorganization and to provide payment to their unsecured creditors. A. at 13, ¶49.

A U.S. Bankruptcy Court for the Southern District of Iowa, reviewing a case in which a debtor sought to preserve farming equipment against a challenge that it was not exempt, summarized the basic purposes of  preserving exempt property as follows:

1. To provide a debtor enough money to survive.
2. To protect his dignity and his cultural and religious identity.
3. To afford a means of financial rehabilitation.
4. To protect the family unit from impoverishment.

5. To spread the burden of the debtor's support from society to his creditors.

Matter of Hahn, 5 B.R. 242, 244 (Bankr. S.D. Iowa 1980).

The purpose of preserving exempt property in bankruptcy is to allow debtors to obtain a fresh start with dignity and without having to struggle for the basic necessities:

> Historically, the purpose of exemption laws has always been to allow debtors to keep those items of property deemed essential to daily life. . . .
>
> In the bankruptcy context, exemptions serve the overriding purpose of helping the debtor to obtain a fresh start. They allow the debtor to come out of the process with not only a minimum amount of dignity, but also the essentials upon which to build a new life. They leave at least the basic necessities, chosen by the debtor from the possessions that the debtor has acquired over a lifetime, so that the debtor may proceed to move forward, rather than spend time struggling simply to exist.

NCLC Consumer Bankruptcy Law and Practice, s 10.1.3.

The ability to avoid pre-petition transfers utilizing the "reasonably equivalent value" standard is integral to this design.

## B. Avoidance proceedings will not unduly impair state interests or prejudice Ontario County

Courts considering these issues have routinely found that avoidance proceedings by debtors under Section 548 do not unduly burden states' interests. See, e.g. Gillespie, 487 B.R. at 921 (rejecting the city's "catastrophesizing" argument); In re Herkimer Forest Prod. Corp., No. 04-13978, 2005 WL 6237559 at

*4, n.8 (Bankr. N.D.N.Y. 2005)("The provisions of NYRPTL are not rendered invalid by this decision ...Whether the transfer is in fact avoidable would have to be determined on a case by case basis"); In re Wentworth, 221 B.R. 316, 320 (Bankr. D. Conn. 1998)("[T]his ruling does not "displace" Maine's forfeiture procedure but merely impinges on it to the extent that forfeited properties may be the subject of § 548 fraudulent transfer actions").

In the instant case, the County raised the specter of interference with titles from foreclosure auctions if avoidance proceedings are permitted. However, these fears of title destabilization do not apply to Chapter 13 pre-auction proceedings like those filed by the Hamptons. Bidders were placed on notice of the avoidance proceeding concerning this specific tax parcel, pursuant to the Bankruptcy Court's order; thus title to other tax parcels was not impacted by the proceeding. See A. at 18-19.

In addition, as a secured creditor, Ontario County is to be made whole through the bankruptcy plan. As part of an avoidance proceeding under 11 U.S.C. § 548, the Hamptons are required throughout the term of their Chapter 13 Plan to pay the current property taxes as they are levied, in addition to paying the arrears, which the Hamptons have done. The Hamptons remain under the supervision of the Chapter 13 Trustee for three to five years. In the event the Hamptons fail to keep the commitments set forth in the Chapter 13 plan, the County may promptly

move for relief from the automatic stay pursuant to 11 U.S.C. § 362 and resume the foreclosure process.

Even before filing for bankruptcy, the Hamptons resumed paying all post-judgment tax foreclosure payments and have continued to make all on-going payments since. A. at 11, ¶33. Through the Chapter 13, Ontario County is currently receiving both the on-going tax payments as well as payments toward the 2015 and 2016 tax arrears. The avoidance proceeding does not relieve the Hamptons of the obligation to pay their taxes. The avoidance procedure only impairs the County's ability to profit from the Hamptons' misfortune.

## C. The Bankruptcy Court erroneously elevates the state's interests above the Hamptons' right to avoidance under the bankruptcy code and fails to account for the impact on other creditors

The Bankruptcy Court's holding overlooks the debtors' statutorily-protected rights under the Bankruptcy Code. Chapter 13 is intended to balance the rights of debtors and creditors. As one bankruptcy court noted:

> By its terms, Vermont's strict foreclosure statute permits an unmitigated windfall to the mortgagor[sic], and that in turn, endangers the debtor's homestead exemption and fresh start, and deprives other creditors (the "bankruptcy estate") from a distribution that they would otherwise receive. This Court must balance the rights of the bankruptcy estate and debtor against the importance of title finality. In so doing, it finds that while it is quite possible for a strict foreclosure scheme to warrant a presumption of reasonably equivalent value, the Vermont statute does not.

In re Chase, No. 02-10582, 2005 WL 189711, at *7 (Bankr. D. Vt. 2005).

Similarly, under Article 11 RPTL, Ontario County receives a windfall at the expense of the Hamptons' ability to execute their Chapter 13 plan, preserve their homestead exemption, and make payments to all creditors - not just Ontario County. Since the Bankruptcy Code does not include an exception from avoidance proceedings for local taxing authorities, they are subject to the "reasonably equivalent value" standard.  The Bankruptcy Court for the Northern District of New York ruled that:

> There is simply no indication that Congress intended to carve out an exception for valid *in rem* state tax foreclosure proceedings. The County tacitly conceded this at oral arguments. The County instead presses a policy argument, asserting that Chief [Bankruptcy] Judge Littlefield's ruling hinders a municipality's right to collect unpaid property taxes through foreclosure proceedings. This argument is unpersuasive and is more appropriately made before Congress.

Clinton Cty. Treasurer v. Wolinsky, 511 B.R. 34, 38–39 (N.D.N.Y. 2014).

In rejecting a similar argument by a taxing authority, the Seventh Circuit Court of Appeals held:

> While applying § 548 may make purchases of Illinois tax liens marginally less attractive as investments, federal law mandates this result. We must enforce the federal bankruptcy remedy for fraudulent transfers where the reasoning of *BFP* does not apply.

In re Smith, 811 F.3d at 240.

Moreover, there is a system already built into Article 11 RPTL to provide relief to a county's homeowners and reduce the likelihood of litigation. This option permits homeowners to repay property tax arrears through monthly installment

payment plans. RPTL §§ 1138(e) and 1184. This process would help reduce the number of cases proceeding to auction or requiring litigation. Ontario County has declined to adopt this state-sanctioned procedure designed to provide relief in a pending tax foreclosure. Accordingly, the Hamptons are entitled to turn to federal bankruptcy remedies to pay their creditors and save their home.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellants Brenda and Joseph Hampton respectfully request that this Court reverse the Bankruptcy Court's Decision to grant Ontario County's motion to dismiss and remand this case to the Bankruptcy Court for further proceedings.

Dated:      March 15, 2018
            Geneva, New York

                        Legal Assistance of Western New York, Inc.
                        Counsel for the Plaintiffs-Appellants
                        Brenda and Joseph Hampton

                        By:   /s/ Kari A. Talbott
                        _____
                        Kari A. Talbott, Esq.
                        361 S. Main Street
                        Geneva, New York 14456
                        Tel: (315) 781-1465
                        Fax: (315) 781-2565
                        ktalbott@lawny.org

## **CERTIFICATE OF COMPLIANCE WITH RULE 8015**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

The undersigned counsel of record hereby certifies that this computer-generated brief contains 9704 words in compliance with the type-volume limitations contained in Rule 8015. As the basis for making this certification, I have relied upon the word count of the word processing system used to prepare it.

The brief was prepared using the proportionally spaced typeface using Microsoft Office Word 2010 in "Times New Roman" with 14 point type, in compliance with Fed. R. Bank. P. Rule 8015(a)(6).


Dated:      Geneva, New York
            March 15, 2018

                                        /s/ Kari A. Talbott

                            _____

                                Kari A. Talbott

# ADDENDUM

United States Code Annotated
   Title 11. Bankruptcy (Refs & Annos)
      Chapter 5. Creditors, the Debtor, and the Estate (Refs & Annos)
         Subchapter III. The Estate (Refs & Annos)

11 U.S.C.A. § 548

§ 548. Fraudulent transfers and obligations

Currentness

**(a)(1)** The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

**(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

**(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and

**(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

**(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

**(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

**(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

**(2)** A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which--

**(A)** the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

**(B)** the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

**(b)** The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

**(c)** Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

**(d)(1)** For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

**(2)** In this section--

**(A)** "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

**(B)** a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment;

**(C)** a repo participant or financial participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement, takes for value to the extent of such payment;

**(D)** a swap participant or financial participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer; and

**(E)** a master netting agreement participant that receives a transfer in connection with a master netting agreement or any individual contract covered thereby takes for value to the extent of such transfer, except that, with respect to a transfer under any individual contract covered thereby, to the extent that such master netting agreement participant otherwise did not take (or is otherwise not deemed to have taken) such transfer for value.

**(3)** In this section, the term "charitable contribution" means a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution--

**(A)** is made by a natural person; and

**(B)** consists of--

    **(i)** a financial instrument (as that term is defined in section 731(c)(2)(C) of the Internal Revenue Code of 1986); or

    **(ii)** cash.

**(4)** In this section, the term "qualified religious or charitable entity or organization" means--

    **(A)** an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or

    **(B)** an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.

**(e)(1)** In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if--

    **(A)** such transfer was made to a self-settled trust or similar device;

    **(B)** such transfer was by the debtor;

    **(C)** the debtor is a beneficiary of such trust or similar device; and

    **(D)** the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

**(2)** For the purposes of this subsection, a transfer includes a transfer made in anticipation of any money judgment, settlement, civil penalty, equitable order, or criminal fine incurred by, or which the debtor believed would be incurred by--

    **(A)** any violation of the securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47))), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws; or

    **(B)** fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*l* and 78*o*(d)) or under section 6 of the Securities Act of 1933 (15 U.S.C. 77f).

**CREDIT(S)**

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2600; Pub.L. 97-222, § 5, July 27, 1982, 96 Stat. 236; Pub.L. 98-353, Title III, §§ 394, 463, July 10, 1984, 98 Stat. 365, 378; Pub.L. 99-554, Title II, § 283(n), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 101-311, Title I, § 104, Title II, § 204, June 25, 1990, 104 Stat. 268, 269; Pub.L. 103-394, Title V, § 501(b)(5), Oct. 22, 1994, 108 Stat. 4142; Pub.L. 105-183, §§ 2, 3(a), June 19, 1998, 112 Stat. 517; Pub.L. 109-8, Title IX, § 907(f), (o)(4) to (6), Title XIV, § 1402, Apr. 20, 2005, 119 Stat. 177, 182, 214.)


Notes of Decisions (2065)

11 U.S.C.A. § 548, 11 USCA § 548
Current through P.L. 115-132.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.