# 17-cv-06808-FPG

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH M. HAMPTON and
BRENDA S. HAMPTON
                *Plaintiffs-Appellants*

    v.

COUNTY OF ONTARIO, NEW YORK, and "JOHN DOE" and "JANE DOE", said
names being fictitious, it being the intention of Plaintiffs to name any third-party
purchaser of Plaintiffs' home at 4583 Lincoln Ave., Canandaigua, NY 14424 during the
property tax foreclosure auction scheduled by Ontario County at 2914 County Road 48,
Canandaigua, NY 14424 at 7 p.m., May 17, 2017
                *Defendant(s)-Appellee(s)*

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK

**PLAINTIFFS-APPELLANTS' MEMORANDUM OF LAW IN REPLY**

Legal Assistance of Western New York, Inc.
Kari A. Talbott, of Counsel
Mark Wattenberg, of Counsel
*Attorneys for Plaintiffs-Appellants*
361 S. Main Street
Geneva, New York 14456
(315) 781-1465
ktalbott@lawny.org

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES…...………………………………...…………….………....i

PRELIMINARY STATEMENT ……………………………………………….………...1

ARGUMENTS ……………………………………………………………...…..……....1

I.   THE OVERWHELMING MAJORITY OF CASE LAW SUPPORTS THE
     HAMPTONS' POSITION ON THE APPLICABILITY OF *BFP*'S CONCLUSIVE
     PRESUMPTION OF "REASONABLY EQUIVALENT VALUE" IN TAX
     FORECLOSURES………...…........................................................................................1

     A.   The Bankruptcy Court's decision conflicts with the decisions of the
          federal appellate courts, which look to whether there are state foreclosure
          protections comparable to state mortgage foreclosure proceedings,
          including competitive bidding…………………………………………….……3

     B.   District and bankruptcy courts across the country, including those relied
          upon by Ontario County, have affirmed the importance of competitive
          bidding and other robust state tax foreclosure procedures...………………………7

     C.   The overwhelming majority of New York federal courts disagree with the
          County's position on the application of BFP to tax foreclosures..…………………9

          1.   New York tax foreclosures do not provide protections to the debtor
               comparable to New York mortgage foreclosures, including
               competitive bidding…………………………………...……………………10

          2.   New York courts have almost uniformly declined to apply *BFP*
               to tax foreclosures…………………………….…………………………13

II.  THERE IS CLEAR CONGRESSIONAL INTENT TO ALLOW AVOIDANCE
     ACTIONS UNDER SECTION 548……………………………………………...………15

     A.   Ontario County does not have a legitimate state interest in the profits
          of the auction…………………………………...……………………………...17

     B.   The legislative history of Section 548 does not support carving out an
          exception from the "reasonably equivalent value" standard for county
          tax foreclosures……………………………..………...…………………………..18

     C.   Ontario County will not be unduly prejudiced by an avoidance
          proceeding…………………………………………...………………………...21

III. THE TRANSFER SHOULD BE AVOIDED UNDER THE FACTS OF THIS CASE
     BECAUSE "REASONABLY EQUIVALENT VALUE" WAS NOT PROVIDED IN
     THIS FORCED TRANSFER………………………………………………………… 24

IV.  ONTARIO COUNTY'S ARGUMENT THAT THE HAMPTONS LACK STANDING
     UNDER SECTION 522(H) IS ENTIRELY WITHOUT MERIT BECAUSE THE
     HOMESTEAD EXEMPTION COEXISTS WITH THE TAX LIEN…………………. 25

CONCLUSION…………………………………………………………………………..29

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Berley Assocs. v. Eckert* ...……………………………………………………………..4
    492 B.R. 433 (Bankr. D.N.J. 2013)

*BFP v. Resolution Trust Corp*…………………………………......1-4, 7-11, 13, 15, 16, 19-21, 24
    511 U.S. 531 (1994)

*In re Brentwood Outpatient, Ltd.* …………………………………………………………..16
    43 F.3d 256, 265 (6th Cir. 1994)

*Canandaigua Land Dev., LLC v. County of Ontario (“Canandaigua I”)*…………………..13, 14
    521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.), *and vacated,*
    *(“Canandaigua II”)* 2017 WL 2821874 (Bankr. W.D.N.Y. 2017) ……………14, 21, 22

*Carloss v. Cty. of Alameda* ………………………………...………………………………….. 4
    242 Cal. App. 4th 116, 128 (2015)

*In re Chase & Sanborn Corp.* ……………………………………………………………….. 17
    813 F.2d 1177 (11th Cir. 1987)

*City of Milwaukee v. Gillespie* …………………….……………………….…………………..9
    487 B.R. 916 (E.D. Wis. 2013)

*Clinton Cty. Treasurer v. Wolinsky*........................................................................................15, 23
    511 B.R. 34 (N.D.N.Y. 2014)

*Cty. of Clinton v. Warehouse at Van Buren St., Inc.*……………………………………….. 15, 22, 28
    496 B.R. 278 (N.D.N.Y. 2013)

*Crespo v. Immanuel* ...…………………………………………………………………....8
    569 B.R. 624 (E.D. Pa. 2017)

*Deel Rent–A–Car, Inc. v. Levine* ...………………………………………………………25
    721 F.2d 750 (11th Cir. 1983)

*DeMarah v. United States*…………………………………………………………………..27
    62 F.3d 1248 (9th Cir. 1995)

*Durrett v. Washington Nat. Ins. Co*……………………………………………………….. 20
    621 F.2d 201 (5th Cir. 1980)

*In re GGI Properties, LLC* …………………………………...…………………. 2,9,16,18, 23
    568 B.R. 231 (Bankr. D.N.J. 2017)

*Kojima v. Grandote Int’l LLC (In re Grandote)* ...……………………………………………4,5
    252 F.3d 1146, 1152 (10th Cir. 2001)

# TABLE OF AUTHORITIES

*Gunsalus v. Ontario Cty., New York/Hampton v. Ontario Cty., New York* ...........................12
    576 B.R. 302 (Bankr. W.D.N.Y. 2017)

*In re Harris* ...................................................................................................17
    464 F.3d 263, 273 (2d Cir. 2006)

*In re Henderson* ..............................................................................................26
    133 B.R. 813 (Bankr. W.D. Tex. 1991)

*In re Herkimer Forest Prod. Corp.* ...........................................................................4,14
    2005 WL 6237559 (Bankr. N.D.N.Y. 2005)

*Hollar v. Myers* ................................................................................................8
    184 B.R. 243 (Bankr. M.D.N.C. 1995)

*Hollar v. U.S* .............................................................................................26, 27
    174 B.R. 198 (M.D.N.C. 1994)

*Johnson v. County of Chautauqua* ..........................................................................25, 27
    449 B.R. 7 (Bankr. W.D.N.Y. 2011)

*Lord v. Neumann* ...............................................................................................8
    179 B.R. 429 (Bankr. E.D. Pa 1995)

*In re Madrid* ..................................................................................................20
    725 F.2d 1197 (9th Cir. 1984)

*In re Martin* ..................................................................................................28
    2014 WL 7011042 (Bankr. E.D. Wis. 2014)

*In re Martyak* .................................................................................................28
    432 B.R. 25 (Bankr. N.D.N.Y. 2010)

*In re Mattis* ..................................................................................................26
    93 B.R. 68 (Bankr. E.D. Pa. 1988)

*In re McKeever* ................................................................................................28
    132 B.R. 996 (Bankr. N.D. Ill. 1991)

*In re Murphy* .............................................................................................12, 14, 18
    331 B.R. 107 (Bankr. S.D.N.Y. 2005)

*In re Perry* ...................................................................................................26
    90 B.R. 565 (Bankr. S.D.Fl. 1988)

*In re Robinson* ................................................................................................26
    166 B.R. 812 (Bankr. D.Vt. 1994)

# TABLE OF AUTHORITIES

*Russell-Polk v. Bradley* ………………………………………………………………….…..7
    200 B.R. 218 (Bankr. E.D. Mo. 1996)

*Sherman v. Rose (In re Sherman)* …………………………………………..…………5, 8
    223 B.R. 555 (B.A.P. 10th Circ. 1998)

*In re Smith* ……………………………………………………………………6, 21
    811 F.3d 228 (7th Cir. 2016),
    *cert. denied sub nom. Smith v. SIPI*, LLC, 137 S. Ct. 103 (2016)

*Matter of T.F. Stone Co., Inc.* ……………………………………………...…………………5, 6
    72 F.3d 466 (5th Cir. 1995)

*In re Tracht Gut, LLC* ……………………………………………...…………………4, 13
    503 B.R. 804 (B.A.P. 9th Cir. 2014), *aff'd*, 836 F.3d 1146 (9th Cir. 2016)

*Matter of Varquez* ……………………………………………………………6, 9, 28
    502 B.R. 186 (Bankr. D.N.J. 2013)

*In re Wentworth* ………………………………………………………...…………16
    221 B.R. 316 (Bankr. D. Conn. 1998)

**Statutes and Regulations**
11 U.S.C. § 522(c)(2)(B)………………………………………………….…………26, 27

11 U.S.C. § 522(d)(1) ……………………………………………….……25

11 U.S.C. § 522(g)……………………………………………………….………...27

11 U.S.C. § 522(h)……………………………………………..…………25, 26, 27, 28

11 U.S.C. § 545…………………………………...………………………… 27

11 U.S.C. § 548……………………………………………1, 9, 15-21, 25-28

11 U.S.C. § 724 ………………………………………………………….27

NY Civil Practice Law & Rules §308 ...…………………………………..…10

NY Civil Practice Law & Rules §3408 …………………………………..10, 11

NY Civil Practice Law & Rules §5206 …………………………………………25

NY Civil Practice Law & Rules §5206(a) …………………………………...…26

NY Real Property Actions and Proceedings Law Article 13 ……………………………10

# TABLE OF AUTHORITIES

NY Real Property Actions and Proceedings Law § 1303...………………………………10

NY Real Property Actions and Proceedings Law § 1304...………………………………10

NY Real Property Actions and Proceedings Law § 1351...………………………………11

NY Real Property Actions and Proceedings Law § 1352...……………………………… 11

NY Real Property Actions and Proceedings Law § 1353...………………………………11

NY Real Property Actions and Proceedings Law § 1354...………………………………11

NY Real Property Actions and Proceedings Law § 1355...………………………………11

NY Real Property Actions and Proceedings Law § 1361...………………………………11

NY Real Property Tax Law Article 11………………...…………………… …3, 6, 7, 10,11, 13, 23

NY Real Property Tax Law § 1125 …………………...…………………………………11

NY Real Property Tax Law § 1131 …………………...…………………………………11

NY Real Property Tax Law § 1136…………………...…………………………………..11

NY Real Property Tax Law § 1138(e) …………………...………………………………24

NY Real Property Tax Law § 1184…………………...………………………………..24

## <u>CONSTITUTIONAL PROVISIONS</u>

U.S. Const. Art. I …………………...……………………………………………...……16

## <u>Secondary Sources and Legislative History</u>

Andrew Butler, *Vexatious Valuations: The Impropriety of Importing BFP to
    Preference Actions*, 27 No. 1 J. Bankr. L. & Prac. NL Art. 2 (2018)………………..…3

Report of the Commission on the Bankruptcy Law of the United States,
    H.R. Doc. No. 137, 93rd Cong., 1st. Session, at Ch. 3, Pt. E(1) (1973)……………...…20

H.R. Rep. 95-595, at *108-9 (1977) ………………………………….……………...…..20

S.R. Rep. No. 95-989, at *27 (1978)………………………………………...…………..19

S.R. Rep No. 95-989, at *89 (1978)……………………………………………...………20

## PRELIMINARY STATEMENT

Plaintiffs-Appellants Brenda and Joseph Hampton ("the Hamptons") respectfully submit this reply to Appellee-Defendant Ontario County's ("Ontario County") appeal brief. For the reasons that follow, the Hamptons respectfully request that this Court reverse the Bankruptcy Court's Decision to grant Ontario County's motion to dismiss and remand this case to the Bankruptcy Court for further proceedings.

## ARGUMENTS

I.   **THE OVERWHELMING MAJORITY OF CASE LAW SUPPORTS THE HAMPTONS' POSITION ON THE APPLICABILITY OF *BFP*'S CONCLUSIVE PRESUMPTION OF "REASONABLY EQUIVALENT VALUE" IN TAX FORECLOSURES**

Section 548 of the Bankruptcy Code allows for the transfer of a debtor's property interest to be avoided, when, among other things, the debtor receives less than "reasonably equivalent value". 11 U.S.C. § 548. In reaching a definition of "reasonably equivalent value" in the context of mortgage foreclosures as "the price in fact received at the foreclosure sale", the Supreme Court in *BFP v. Resolution Trust Corp. ("BFP")* reasoned that for forced-sale properties, the price obtained at auction was the best measure of "reasonably equivalent value". *BFP*, 511 U.S. 531, 545, 548-49 (1994). *BFP* found a conclusive presumption of "reasonably equivalent value" in the context of mortgage foreclosure sales. 511 U.S. at 548-549.

In justifying this ruling, *BFP* recalled the history of mortgage foreclosures, beginning with the strict foreclosures where "the borrower's entire interest in the property was forfeited, regardless of any accumulated equity." *Id.* at 541. The Court then described modern mortgage foreclosure sale procedures, which the states have implemented "as a means of avoiding the draconian consequences of strict foreclosure". *Id.* at 541-42.

When deciding whether *BFP* applies to tax foreclosures, a majority of courts have held that where the procedures of state tax foreclosures provide similar protections as mortgage foreclosures, taxing authorities are entitled to a presumption that "reasonably equivalent value" was provided. *In re GGI Properties, LLC ("In re GGI"),* 568 B.R. 231, 241-45 (Bankr. D.N.J. 2017)(reviewing the case law nationally). On the other hand, when tax debtors are afforded less protections than those in the mortgage foreclosure context, courts have generally held that the transfer of the property could be avoided. *Id*. The overwhelming majority of courts across the country, including the Ninth, Tenth, Fifth and Seventh Circuits, though reaching different results due to different underlying state laws, have all adopted this general framework when analyzing *BFP*'s applicability to tax foreclosures. *See* Parts I.A.-C., *infra.* When applying this

framework for analyzing "reasonably equivalent value"[1], the transfer of the

Hamptons' home should be subject to an avoidance proceeding due to the lack of

protection for tax debtors in New York when compared with mortgagors. These

differences include, in particular, the strict forfeiture of property in tax foreclosure

proceedings and the lack of competitive bidding.[2] *See* Part I.C., *infra*.

A.   **The Bankruptcy Court's decision conflicts with the decisions of the federal appellate courts, which look to whether there are state foreclosure protections comparable to state mortgage foreclosure proceedings, including competitive bidding**

While the federal appellate courts have reached different outcomes on the

extension of *BFP*, their analysis is rooted in the same principles. A closer

examination of the appellate decisions from the Ninth, Tenth, Fifth, and Seventh

Circuits shows that the presence of competitive bidding is a key factor in

determining whether *BFP* is applicable in the tax foreclosure context.[3]

The leading Ninth Circuit case on this issue makes plain that it relied upon

robust state law protections, including an auction with competitive bidding, in

---

[1] The County inexplicably spends much time discussing "fair market value" and appears to argue the inappropriateness of that standard. Brief For Defendant-Appellee Ontario County (hereinafter "Brief") at 17-18, 26-29. The Hamptons do not dispute that point and have not argued that fair market value is the definition for "reasonably equivalent value".

[2] The Hamptons contend that Article 11 procedures are deficient in a variety of respects under the factors identified in *BFP*. They focus on competitive bidding as the most blatant deficiency.

[3] This issue is discussed in Andrew Butler, *Vexatious Valuations: The Impropriety of Importing BFP to Preference Actions*, 27 No. 1 J. Bankr. L. & Prac. NL Art. 2 (2018), where he notes "...the federal appellate courts that have considered the issue agree: *BFP*'s applicability ... depends on the tax lien foreclosure method the state uses." After analyzing cases in the federal courts of appeals Butler states, "When states permit public and competitive bidding, courts extend *BFP*'s determination of "reasonably equivalent value" to tax lien foreclosure sales." *Id*.

reaching its conclusion regarding *BFP*. *In re Tracht Gut, LLC ("In re Tracht Gut")*, 836 F.3d 1146, 1153-54 (9th Cir. 2016). The California tax foreclosure proceeding at issue in that case has an auction, the same general procedural safeguards as California mortgage foreclosures, and a mechanism for property owners to file a claim for excess proceeds. *Id*. As a California appeals court summarized: "The clear object of the statute is to protect homeowners who default on taxes from losing the equity in their homes in excess of the amount of their tax liability." *Carloss v. Cty. of Alameda*, 242 Cal. App. 4th 116, 128 (2015). This is not the case in New York. *See* Part I.C. and Part III, *infra*. The *Tracht Gut* court alluded to this very problem, noting "Although certain bankruptcy courts have declined to extend *BFP* to prepetition tax sales, that was because of identified deficiencies in the tax sale procedures of the states in question." *In re Tracht Gut*, 836 F.3d at 1154-55, citing *Berley Assocs. v. Eckert*, 492 B.R. 433, 440–41 (Bankr. D.N.J. 2013); *Herkimer Forest Prod. Corp. v. Cnty. of Clinton ("In re Herkimer")*, 2005 WL 6237559, at *3–4 (Bankr. N.D.N.Y. 2005).

Likewise, the Tenth Circuit in *Kojima v. Grandote Int'l, LLC ("In re Grandote")*, afforded the taxing authority a presumption that "reasonably equivalent value" was provided in a Colorado tax foreclosure which included competitive bidding, but noted that a different conclusion had been reached when Wyoming state law did not provide for a competitive bidding procedure. *In re*

*Grandote,* 252 F.3d 1146, 1152 (10th Cir. 2001)(citing *Sherman v. Rose* (*"In re Sherman"*), 223 B.R. 555, 558–59 (B.A.P. 10th Cir. 1998)).

*In re Grandote* discussed *In re Sherman* in reaching its decision. *Id.* The Bankruptcy Appellate Panel in *In re Sherman* found the Wyoming tax foreclosure process to be lacking in key procedural safeguards of the Wyoming mortgage foreclosure process. *In re Sherman*, 223 B.R. at 559. Accordingly, the *Sherman* court held that the Wyoming tax foreclosure process did not provide "reasonably equivalent value" as there was no auction with competitive bidding before the property was transferred. *Id.* With this backdrop, the Tenth Circuit *In re Grandote* court stated, "...**the decisive factor** in determining whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' is a state's procedure for tax sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure." *In re Grandote,* 252 F.3d at 1152 (emphasis added). Ontario County's reliance on *In re Grandote* is unsupportive of its argument because New York's tax foreclosure and mortgage foreclosure systems do not provide similar safeguards. *See* Part I.C., *infra*.

Ontario County's reliance on *Matter of T.F. Stone Co., Inc. ("T.F. Stone")*, 72 F.3d 466 (5th Cir. 1995) is similarly misplaced. The Oklahoma tax foreclosure procedure considered in that case provided for a public auction and a right to redeem for two years after the auction. *T.F. Stone,* 72 F.3d at 467, 471; *See also*

*Matter of Varquez*, 502 B.R. 186, 195 (Bankr. D.N.J. 2013)(analyzing the *T.F. Stone* decision and finding that the Oklahoma statute at issue there exposes the property to the marketplace, with public advertisement and competitive bidding auction processes). These protections are lacking under Article 11 of the New York Real Property Tax Law (hereinafter "Article 11").

Finally, Ontario County does not even address the Seventh Circuit's decision in *In re Smith*, 811 F.3d 228 (7th Cir. 2016), *cert. denied sub nom. Smith v. SIPI, LLC*, 137 S. Ct. 103 (2016). In this case, the Seventh Circuit declined to extend *BFP* to Illinois' tax foreclosure scheme because it "differs dramatically from the competitive bidding in *BFP*….'". *In re Smith*, 811 F.3d at 238. In Illinois, the potential buyers bid on the tax lien rather than the property. *Id*. at 237. The purchase price of the property is therefore usually nothing more than the sum of the delinquent taxes because potential buyers bid on the opportunity to purchase tax liens placed on properties, rather than the opportunity to purchase the properties outright, and also face the risk that the owners will redeem the properties. *Id*. at 237-38. Because of the procedural differences between Illinois' tax sale system and the mortgage foreclosures at issue in *BFP*, the Seventh Circuit upheld the decision that the *Smith* transfer was avoidable under Section 548. *Id.* at 238.

Contrary to Ontario County's arguments, these four appellate cases show that the level of protection a state tax foreclosure regime provides must compare favorably to its level of protection for mortgage foreclosures, particularly when it comes to competitive bidding. This Article 11 cannot do.

## B.    District and bankruptcy courts across the country, including those relied upon by Ontario County, have affirmed the importance of competitive bidding and other robust state tax foreclosure procedures

Consistent with the interpretation utilized by the appellate courts, U.S. District Courts and Bankruptcy Courts across the country considering the applicability of the *BFP* standard to *in rem* tax foreclosures have routinely compared state tax and mortgage foreclosure procedures. Many of these courts have found that a state's absence of competitive bidding to be an important, and at times, even decisive factor because of *BFP*'s demand that some degree of market forces act to determine price. *BFP*, 511 U.S. at 545-6.

Indeed, many of the District and Bankruptcy Court cases cited by Ontario County in its brief do not support its protest that competitive bidding is not an important element of the analysis on whether *BFP* should apply to tax foreclosures. In fact, these cases instead reinforce the Hamptons' claim that Article 11--which does not have a pre-seizure auction, and in which the county takes the surplus--does not provide "reasonably equivalent value." *See, e.g. Russell-Polk v. Bradley*, 200 B.R. 218, 221 (Bankr. E.D. Mo.

1996)(extending *BFP* where the Missouri tax foreclosure statute provided

the same protections as in mortgage foreclosure proceedings, including a

"'public auction with competitive bidding'")(internal citations omitted);

*Hollar v. Myers,* 184 B.R. 243, 251 (Bankr. M.D.N.C. 1995)(extending *BFP*

where IRS tax sales are "conducted by public auction with competitive

bidding" and "protections … such as a minimum acceptable bid and a long

(six months) redemption period are arguably greater than those provided in

most foreclosure statutes"); *In re Sherman,* 223 B.R. at 559 (holding *BFP*

inapplicable to Wyoming tax sales in which competitive bidding is not a

component); *Lord v. Neumann*, 179 B.R. 429, 435-36 (Bankr. E.D. Pa

1995)(extending *BFP* where Pennsylvania taxpayers received greater

protections than mortgagors, and both schemes "contemplate[] competitive

bidding"); *Crespo v. Immanuel*, 569 B.R. 624, 631, 635 (E.D. Pa.

2017)(extending *BFP* given "similarities between the procedural protections

applicable" to tax sales and mortgage foreclosures).

    Ontario County makes the fatal mistake of pointing to these decisions'

outcomes without looking at how the courts arrived there. Under *BFP*, the

definition of "reasonably equivalent value" in the mortgage foreclosure

context is tied to an auction that results in a sale price derived from

competitive bidding. *See BFP*, 511 U.S. at 548-549. Ontario County has

entirely failed to address the many courts that have found competitive

bidding to be key in determining if *BFP* should apply to tax foreclosures.

*City of Milwaukee v. Gillespie*, 487 B.R. 916, 920 (E.D. Wis. 2013); *Matter*

*of Varquez*, 502 B.R. at 192; *In re GGI,* 568 B.R. at 243.

The national body of case law on *BFP*'s applicability to tax lien foreclosure

sales shows that the *BFP* presumption of "reasonably equivalent value" is only

applicable if there are competitive bidding and other safeguards at least as

protective as state mortgage law in the methods used by the states to foreclose for

delinquent property taxes. As a strict-forfeiture tax foreclosure regime with

significantly less protections than in the mortgage foreclosure context, New York's

system does not provide for the extension of *BFP*, and New York courts have

overwhelmingly held as such. *See* Part I.C. *infra*.

C.     **The overwhelming majority of New York federal courts disagree**
       **with the County's position on the application of *BFP* to tax**
       **foreclosures**

The overwhelming majority of federal courts in New York have allowed

eligible debtors who lost properties through tax foreclosure to avoid the transfers

under Section 548 because New York's tax foreclosure scheme provides less

protection than mortgage foreclosures, including competitive bidding at a public

auction.

1. <u>New York tax foreclosures do not provide protections to the debtor comparable to New York mortgage foreclosures, including competitive bidding</u>

State law is the guiding benchmark when evaluating the applicability of the *BFP* presumption. Ontario County discusses at length the procedures in place for tax foreclosures in New York. Brief at 31-35. The County acknowledges the importance of comparing state tax and mortgage law, but does not do so. *Id*. at 20-23. Evaluating the differences between New York's mortgage foreclosure process under Article 13 of the New York Real Property Actions and Proceedings Law (hereinafter "NYRPAPL") and the state tax foreclosure process, the comparison is not favorable to Article 11.

The Article 11 process lacks many procedural protections which are built into the state mortgage foreclosure process. Under NYRPAPL, a lender must provide 90 days' notice before commencing a mortgage foreclosure proceeding; that they must be in 14-point type, warn homeowners, "YOU MAY BE AT RISK OF FORECLOSURE", and provide homeowners with a list of free resources to contact to avoid foreclosure. NYRPAPL § 1304. Homeowners facing mortgage foreclosure are served the complaint by a process server, along with a statutorily-mandated, brightly colored notice in bold-type font with additional information about how to seek assistance, including legal help. New York Civil Practice Law & Rules (hereinafter "NYCPLR") §308; NYRPAPL §1303. A borrower

occupying his or her primary residence is entitled to a mandatory settlement conference to discuss options to avoid foreclosure, and appearance at the settlement conference triggers an automatic 30-day extension to submit a late answer. NYCPLR § 3408. Foreclosures end with a public action with competitive bidding. NYRPAPL §§1351-1355. Homeowners also may redeem at any time before auction. NYRPAPL §1352. Finally, a borrower is entitled to the surplus at the mortgage foreclosure auction, and so will not lose any accumulated equity in the property. NYRPAPL §1361.

By contrast, Article 11 tax foreclosures conducted by Ontario County lack the panoply of consumer procedural protections which exist in the New York mortgage foreclosure scheme. Tax foreclosure complaints are mailed to homeowners rather than served, without the relatively consumer-friendly notices on homeowner rights or information on how to obtain assistance. NYRPTL § 1125. Article 11 tax foreclosures have no mechanisms for settlement conferences, auctions, or recovery of surplus. Homeowners are not entitled to such surplus as might be recovered. NYRPTL §1131; NYRPTL §1136. Article 11 is a strict forfeiture system in which the taxpayer-homeowner loses ownership to the home long before the auction. NYRPTL §1131; NYRPTL §1136. In many ways, New York's Article 11 procedures resemble the "strict foreclosures" that *BFP* noted rarely occur anymore in the mortgage context. 511 U.S. at 541.

Finally, Ontario County puts a great deal of emphasis on the other factors identified by *BFP*, particularly notice given to tax debtors. But this discussion largely misses the most important considerations, particularly the nature of New York's code as a strict forfeiture, the lack of competitive bidding, and the narrowness of the state court's scope of judicial review.

Ontario County, in its opposition brief, implies that state court review of the tax foreclosure process provides a safeguard for homeowners facing the loss of their home and all of their equity. Brief at 34. However, supervision by the state courts is almost entirely focused on the procedural requirements of the Article 11 process. Rarely does it focus on inadequacy of price. *In re Murphy*, 331 B.R. 107, 127 (Bankr. S.D.N.Y. 2005).

The Bankruptcy Court, in its decision granting Ontario County a conclusive presumption of providing Mr. and Mrs. Hampton with "reasonably equivalent value", found that the proceedings were "conducted under the direct judicial supervision of the New York courts, with strict adherence to the statutory requirements of Article 11 RPTL." *Gunsalus v. Ontario Cty./Hampton v. Ontario Cty.*, 576 B.R. 302, 312 (Bankr. W.D.N.Y. 2017). But judicial supervision, which is primarily limited to the technical requirements of foreclosure, does not address the failure of the County to provide "reasonably equivalent value" when there is a significant disparity between the auction value and the tax lien.

Nor can a "totality of the circumstances" compensate. *Cf.* Brief at 20-21 (listing such circumstances as presence of notice, opportunity to cure and judicial oversight of the process, as well as policy considerations). Indeed, no amount of notice can cure the fact that the process involves forfeiture of the property and all accumulated equity only for satisfaction of the tax lien. Likewise, courts considering strict compliance with state procedures do not do so in a vacuum. If those state procedures have "identified deficiencies" (*In re Tracht Gut,* 836 F.3d at 1154), then compliance - however strict - is meaningless.

> 2. New York courts have almost uniformly declined to apply *BFP* to tax foreclosures

Ontario County has waded far afield to argue that it is entitled to a conclusive presumption of "reasonably equivalent value", citing almost all non-New York cases involving distinct tax foreclosure systems. Ontario County is arguing against the weight of case law decided within the Second Circuit, especially by courts interpreting Article 11.

In 2014, the Bankruptcy Court for the Western District of New York considered the applicability of the *BFP* to property tax foreclosures and declined to extend *BFP*'s presumption of "reasonably equivalent value" in an extensive and thorough analysis of a Chapter 7 debtor's avoidance action concerning commercial property. *In re Canandaigua Land Dev., LLC ("Canandaigua I"),*

521 B.R. 457, 469-78 (Bankr. W.D.N.Y. 2014). Less than three years later, the court vacated its decision in *Canandaigua I*, and reinstated the previously avoided transfer after finding the Chapter 7 Trustee had been unable to liquidate the property, noting that the property tax arrears had grown from $16,595 to $156,000. *Canandaigua II*, 2017 WL 2821874 at *3 (Bankr. W.D.N.Y. 2017)(hereafter "*Canandaigua II*"). The Hamptons respectfully submit that the Bankruptcy Court's first analysis of *BFP* was the correct one.

Courts across New York have declined to extend the presumption of "reasonably equivalent value" to tax foreclosure proceedings due to their deficient procedural protections. Because New York mortgage foreclosure procedures require a sale prior to the expiration of the redemption period, but New York tax foreclosure procedures do not, the *Murphy* court in the Southern District of New York held that the trustee had stated a claim that reasonably equivalent value was not provided. *In re Murphy*, 331 B.R. at 120.

Bankruptcy Courts and U.S. Districts Court in the Northern District of New York have also found the *BFP* presumption does not apply to tax foreclosures under Article 11. *In re Herkimer*, 2005 WL 6237559, at *4 (noting that under Article 11 there is no provision for public sale and competitive bidding before transfer, and though county conducts a public sale after it takes title, the value received at auction inures to the county's benefit and not the debtor's); *Clinton*

14

*Cty. Treasurer v. Wolinsky ("Wolinsky")*, 511 B.R. 34, 38-39 (N.D.N.Y. 2014)

(relying in part on "the 'substantial differences between [New York] mortgage and

*in rem* tax foreclosures that distinguish the two and justify their different

treatment'" in allowing Bankruptcy Code avoidance (internal citations omitted));

*Cty. of Clinton v. Warehouse at Van Buren St., Inc. ("Warehouse at Van Buren*

*St.")*, 496 B.R. 278, 283 (N.D.N.Y. 2013) (reasoning the amount of a tax lien is

not evidence of a property's value and cannot lead to a presumption of "reasonably

equivalent value" under *BFP*).

    Ontario County does not dispute that market forces are inapplicable to

Article 11 tax foreclosure proceedings. The Hamptons' home was forfeited for a

approximately $5,200.00 in tax arrears. A. at 12. The subsequent auction yielded a

sale of $27,000, with the surplus going to the County. A. at 78, 80-81. Neither *BFP*

nor the overwhelming body of New York case law interpreting it suggest that

"reasonably equivalent value" is obtained from such a forfeiture proceeding.

## II.    THERE IS CLEAR CONGRESSIONAL INTENT TO ALLOW AVOIDANCE ACTIONS UNDER SECTION 548

    Ontario County argues that it is exempt from a requirement of a pre-

forfeiture auction, because, "[t]he plain language of Section 548 states no such

clear and manifest intention to overturn state foreclosure law." Brief at 41. This is

not the standard. Section 548, on its face, does not carve out an exception for

taxing authorities. 11 U.S.C. § 548.

This court acknowledges that *BFP* raises concerns about the avoidance of foreclosure sales in bankruptcy matters and directs that a "federal statutory purpose" to "displace traditional state regulation" must be "clear and manifest." But the *BFP* majority solved that problem by defining "reasonably equivalent value" to be the amount obtained at the foreclosure sale held pursuant to the state's mortgage foreclosure procedures, requiring *inter alia,* notice and an opportunity for competitive bidding. Moreover, the Supreme Court "expressly left open the prospect that transfers occurring in the context of 'tax sale' may be avoidable under § 548."

*In re GGI,* 568 B.R. at 246-47 (internal citations omitted).

Under Article I of the Constitution, Congress has the power to enact bankruptcy statutes, which by definition impinge on creditor's rights. *See also In re Brentwood Outpatient, Ltd. ("In re Brentwood")*, 43 F.3d 256, 265 (6th Cir. 1994)("[t]he federal bankruptcy power may constitutionally impinge on the state taxing power….). Transfers may be avoided under the plain language of Section 548 if there is a lack of "reasonably equivalent value" in the transfer and other requirements of this section are met. 11 U.S.C. § 548. The "plain language" does not include an exception for county tax authorities. *Id.*

In order to establish that it is exempt from a bankruptcy remedy, such as an avoidance proceeding, a creditor must point to a specific bankruptcy provision. *See In re Wentworth*, 221 B.R. 316, 320 (Bankr.D.Conn. 1998)(stating a taxing authority faces the same rules of bankruptcy that other creditors, public and private, have to meet, citing *In re Brentwood*, 43 F.3d at 265). The burden is on

Ontario County to identify a statutory exception from applying the "reasonably equivalent value" standard of Section 548 to its tax foreclosure process.

### A.   Ontario County does not have a legitimate state interest in the profits of the auction

Ontario County has a legitimate state interest in the recovery of its taxes, which will be paid in full under the Hamptons' Chapter 13 plan if the transfer is avoided. A. at 6. Ontario County **does not** have a legitimate interest in protecting its windfall - only in recovering the amount of its tax lien.

In *In re Harris,* the Second Circuit overturned dismissal of the appeal of a debtor's Section 548 claim to avoid property lost to tax foreclosure on procedural grounds. *In re Harris*, 464 F.3d 263 (2d Cir. 2006). Doing so, the Second Circuit noted its concerns that a New York county appeared to have reaped a windfall at the expense of other creditors, and directed the lower court to be mindful "that there is a strong presumption of not allowing a secured creditor to take more than its interest". *In re Harris*, 464 F.3d at 273.

Protection of creditors is why fraudulent transfers are avoidable because otherwise they diminish the assets of the debtor "to the detriment of some or all creditors." *In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987).

As another court noted:

> A municipality's goal is not supposed to be to get rich off of tax foreclosures. Its goal is securing payment of outstanding tax

obligations. Our bankruptcy system attempts to ensure fair treatment of all creditors; municipalities similarly seek to ensure equitable payment of taxes across its constituents. While the Bankruptcy Code may interrupt a municipality's pursuit of that goal, it does not prevent it, and the City's policy considerations are inadequate to overcome [debtor's] right to pursue a claim under §… 548.

*In re GGI*, 568 B.R. at 249.

Preservation of the home is essential for the success of the Hamptons' Chapter 13 Plan -- and this benefits all of their creditors. A. at 13, ¶49-50. Only one creditor – Ontario County – benefits if the transfer of the Hampton home in the tax foreclosure is not avoided. Avoiding the transfer protects Ontario County's legitimate state interest in recovering its tax debt while also preserving the Hamptons' federal rights under the Bankruptcy Code and preserving assets for the benefit of all the Hamptons' creditors.

> **B.    The legislative history of Section 548 does not support carving out an exception from the "reasonably equivalent value" standard for county tax foreclosures**

Ontario County incorrectly argues that if a debtor can claim an avoidance, state law would be overturned by the Bankruptcy Code. Brief at 41-47. However, courts within the Second Circuit have rejected arguments by local governments that their state interests preclude assertion of federal bankruptcy rights. *See, e.g. Murphy*, 331 B.R. at 121 (finding "[d]efendant is not denied its very important interest in securing payment of outstanding tax obligations by reason of avoidance of the transfer to the extent necessary to protect other creditors.")

The legislative history of Section 548 likewise does not provide support for Ontario County in this regard. The *BFP* decision itself, in a footnote, termed the legislative history of the 1984 amendments as unhelpful in defining "reasonably equivalent value." *BFP*, 511 U.S. at 543, n. 7. The *BFP* Court observed that the technical amendments to Section 548 did not have "any bearing upon the meaning of 'reasonably equivalent value' in the context of a foreclosure sale. *Id.*

If anything, legislative history shows that Congress intended a broad approach. Even before the 1984 amendments, the general definition of transfer in the Bankruptcy Code was defined expansively:

> A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property.

S.R. Rep. No. 95-989, at *27 (1978).

Similarly, the 1984 amendments to the Bankruptcy Code do not support the County's claims of immunity from Section 548 when conducting tax foreclosures. Ontario County argues that in 1984, two Senators questioned the application of the section to foreclosure sales.[4]  Brief at 42. However, Congress did not take the

---

[4] This legislative colloquy is also of limited usefulness to the discussion, as the Senators in question were discussing mortgage foreclosures, not tax foreclosures. *See* Addendum to Brief For Defendant-Appellee Ontario County, citing Norton Bankruptcy Code, Annotated at 933-44

opportunity in 1984 to amend Section 548 to carve out an exception for taxing authorities. Instead, it amended Section 548 to expand the already-broad definition of "transfer" to include "foreclosure of the debtor's equity of redemption" and added the words "voluntarily or involuntarily" as modifiers of the term "transfer" in § 548(a). *BFP*, 511 U.S. at 543, n. 7, 554.

By enacting both an intentional and a constructively fraudulent transfer provision in Section 548, Congress broadly authorized trustees, or debtors stepping into the shoes of trustees, to include all of debtors' property in bankruptcy estates and to retain greater amounts of equity in bankruptcy estates for the benefit of creditors. *See* S.R. Rep No. 95-989, at *89 (1978); H.R. Rep. 95-595, at *108-9 (1977). The Commission on the Bankruptcy Laws of the United States recognized that Congress, by enacting federal bankruptcy laws, intended to give debtors a fresh start and protect the position of all creditors in an open credit economy. Report of the Commission on the Bankruptcy Law of the United States, H.R. Doc. No. 137, 93rd Cong., 1st. Session, at Ch. 3, Pt. E(1) (1973). This report became the impetus for bankruptcy reform in the 1970s.

Bankruptcy law, by definition, involves impinging on creditors' rights. *BFP* defines "reasonably equivalent value" in the context of mortgage foreclosures, and elucidates the circumstances under which a conclusive presumption of "reasonably

---

(discussing the circuit split between *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir. 1980) and *In re Madrid* 725 F.2d 1197 (9th Cir. 1984).

equivalent" value may be claimed. 511 U.S. at 535. Neither *BFP* nor the legislative

history of Section 548 stand for the idea that taxing authorities are immune from

avoidance proceedings. Nor can Ontario County cite any legislative history which

allows it to presumptively define "reasonably equivalent value" as the amount of

the tax lien and to take the surplus from all tax foreclosures as a windfall.

## C.      Ontario County will not be unduly prejudiced by an avoidance proceeding

Ontario County expounds at length on the severe prejudice it will allegedly

suffer if the Hamptons are allowed to keep their home including dilapidation,

blight, the erosion of its tax base, "clouds on title", and unspecified uncertainty and

inconsistency in the property tax foreclosure process. Brief at 24, 35-38. It does

not, however, cite any evidence for the apparent implication that the Hamptons'

continued homeownership will manifest these conditions. With few exceptions,

courts have regularly rejected such policy arguments when considering a debtors'

federal right to an avoidance under Section 548 and a government's competing

interests. *See e.g. In re Smith*, 811 F.3d at 239 (rejecting an argument that

application of *BFP* would "wreak havoc" with Illinois' system for collecting

delinquent property taxes).

The reality is far from the parade of horribles imagined by Ontario County

in its brief. In contrast to the taxpayers in *Canandaigua II*, 2017 WL 2821874, at

*1, avoidance in the present case does not pose prejudice to Ontario County.

First, unlike the property owner in *Canandaigua II*, 2017 WL 2821874, at *1, the Hamptons have made all on-going tax payments that have come due since the deadline to redeem in January 2017, and every penny of real estate taxes owed for the Hamptons' home has been paid or will be paid under the terms of the Chapter 13 plan. A. at 6, ¶ 2; A. at 11-12.

Second, the Hamptons continue to occupy the home, as they have for many years, and have demonstrated a strong personal stake in the outcome of this case. A. at 9, ¶ 20-21. Different considerations might apply to commercial debtors or non-residential debtors like the one in *Canandaigua II,* 2017 WL 2821874, at *1. In this case, however, Ontario County is not being prejudiced by a tax parcel that has been abandoned by a non-residential owner.

Third, unlike the cases cited by Ontario County, (Brief at 25), there is no question of title - the Hamptons' adversary proceeding was filed before the auction and before title was transferred to a third party. A. at 88, A. at 18. Bidders at the auction were notified, pursuant to court order, of the pending litigation before bidding. A. at 18-19.

Likewise, a ruling in favor of the Hamptons will not result in a perennially adverse result for Ontario County, as the question of "reasonably equivalent value" will remain open for the bankruptcy court to determine on a case-by-case basis. *Warehouse at Van Buren St.*, 496 B.R. at 283. Moreover, the Hamptons, as

well as other debtors like them, have the burden of establishing the lack of "reasonably equivalent value" and insolvency. *Wolinsky*, 511 B.R. at 38. This reality will deter many applications.

Moreover, the mechanisms of the Bankruptcy Code itself ensure that there is little prejudice to the county beyond the specific facts of this case. *In re GGI,* 568 B.R. at 247-49. The *GGI* court noted that the Bankruptcy Code has special protections for tax collectors, including giving municipalities secured claims for taxes, that debtors must immediately provide adequate protection for the property, that debtors must pay post-petition taxes, and that failure to comply with those conditions results in the conversion of Chapter 13 bankruptcies to Chapter 7 bankruptcies and/or the dismissal of their bankruptcies. *Id*. at 248. The court further noted that the inherent limitations in Section 548, including the two-year statute of limitations and that taxpayers must demonstrate they are insolvent or rendered insolvent by the transfer, lessen " a municipality's risk of an avoidance of its foreclosure action" *Id*. at 249. Ontario County, like all municipalities, enjoys these protections.

Finally, Ontario County's argument of disruption to its tax foreclosure regime is significantly undercut by New York's law on installment payment agreements for back taxes. Article 11 allows counties to adopt installment agreements where payments may be made over a term of two years in order for

homeowners to avoid foreclosure. NYRPTL §§1138(e) and 1184.  Ontario has

thus far declined. However, New York State, by codifying this option under state

law, suggests that the important state interests in collecting taxes are not so urgent

that they cannot be reconciled with an approach that provides relief for taxpayers

facing financial difficulties.

**III.    THE TRANSFER SHOULD BE AVOIDED UNDER THE FACTS OF THIS CASE BECAUSE "REASONABLY EQUIVALENT VALUE" WAS NOT PROVIDED IN THIS FORCED TRANSFER**

Ontario County argues erroneously that *BFP* should be extended to Article

11 tax foreclosures. Even if it were extended, however, Ontario County fails to

show how the extension of *BFP* commands a result in its favor under the facts of

this case. Application of the *BFP* standard of "reasonably equivalent value"

actually supports a finding for the Hamptons. *BFP* states that "reasonably

equivalent value" is the price **in fact received** at the foreclosure sale. 511 U.S. at

545. Long after the Hamptons lost any right of redemption to it under New York

law, the Hampton's home was sold at auction for $27,000. A at 88. Under New

York law, neither the Hamptons nor any of their other creditors receive the benefit

of that value. A at 14, ¶59. Ontario County makes a profit of approximately

$21,798.13 off the difference between the forced sale price and the tax debt. By

*BFP*'s own terms, such a result would not result in "reasonably equivalent value"

to the Hamptons, and the County entirely fails to address this in its response.

**IV.   ONTARIO COUNT'S ARGUMENT THAT THE HAMPTONS LACK STANDING UNDER SECTION 522(H) IS ENTIRELY WITHOUT MERIT BECAUSE THE HOMESTEAD EXEMPTION COEXISTS WITH THE TAX LIEN**

In its appeal brief, Ontario County incorrectly argues that the existence of its tax lien deprives the Hamptons from claiming a homestead exemption, which in turn robs the Hamptons of standing to bring a property transfer avoidance proceeding under Section 522(h) and Section 548 of the Bankruptcy Code. Brief at 43.  Ontario County raised this argument below, but it was summarily dismissed by the Bankruptcy Court, which held that the complaint survives unless the County can establish a conclusive presumption of providing "reasonably equivalent value" for the foreclosure. A. at 90.

The Hamptons claimed federal exemptions in their bankruptcy filing, including the federal homestead exemption under Section 522(d)(1). A at 16, ¶66. They have standing under Section 522(h) to avoid the transfer of their home under Section 548. *See Deel Rent–A–Car, Inc. v. Levine*, 721 F.2d 750, 754 (11th Cir. 1983)(holding the plain language of section 522(h) gives debtors who can exempt property standing to bring actions under the avoidance sections). Their standing is not precluded by the *Johnson* decision, *Johnson v. County of Chautauqua*, 449 B.R. 7, 12 (Bankr.W.D.N.Y. 2011), which concerns the New York State homestead exemption under CPLR §5206. The New York state exemption has an explicit exception from the use of the state homestead exemption if taxes are

unpaid. CPLR § 5206(a). The federal homestead exemption, which the Hamptons

claim, has no such limiting language. Ontario County's argument ignores this

important distinction.

Moreover, Section 522(c)(2)(B) does not bar the Hamptons from claiming

the federal homestead exemption. Instead, 522(c)(2)(B) provides that exempt

property remains "liable" for a tax lien. 11 U.S.C.§ 522(c)(2)(B). The purpose of

this section is to prevent the tax lien from being dissolved and to preserve the

secured status of the tax authority creditor. It does not authorize the liquidation of

exempt property where the tax lien will paid off under a Chapter 13 Plan. It also

does not prevent debtors from claiming a federal homestead exemption, or in turn

thwart their standing to pursue an avoidance proceeding under Section 522(h).

*Hollar v. U.S.*, 174 B.R. 198, 204 (M.D.N.C. 1994).

Ontario County cites absolutely no case law that applies Section

522(c)(2)(B) to limit the applicability of Section 548. Contrary to Ontario County's

unsupported assertion that there is a "well-settled body of case law holding that a

Chapter 13 Debtor may not utilize the trustee's avoidance powers to avoid a

transfer of property resulting from a tax lien," (Brief at 45), every case cited by

Ontario County concerns other sections of the Bankruptcy Code. *In re Henderson*,

133 B.R. 813 (Bankr.W.D. Tex. 1991), *In re Robinson*, 166 B.R. 812 (Bankr.D.Vt.

1994), *In re Perry*, 90 B.R. 565 (Bankr.S.D.Fl. 1988), *In re Mattis,* 93 B.R. 68

26

(Bankr.E.D. Pa. 1988), and *DeMarah v. United States,* 62 F.3d 1248 (9th Cir.

1995), all concern debtors attempting to avoid **the payment** of federal or state

taxes under Section 545 or Section 724 of the Bankruptcy Code; none address the

standing of a debtor attempting to avoid **a transfer** under Section 548.

Ontario County latches on to the words "avoid" and "taxes" - but context

makes all the difference. As one District Court noted, "because the [debtors] do not

seek to avoid the tax lien under section 545, but challenge the tax sale as

constructively fraudulent under Section 548, section 522(c)(2)(B) does not negate

their potential standing under section 522(h)." *Hollar*, 174 B.R. at 204.

The Hamptons are not seeking avoidance of liens under any of the

Bankruptcy Code provisions at issue in the cases cited by Ontario County, nor are

they seeking avoidance of a tax lien *at all*. Quite the opposite - the Hamptons are

asserting the right to avoid transfer of their home in order to pay their back taxes to

Ontario County under their Chapter 13 Plan. A at 1.

The Hamptons meet all the requirements of standing under Sections 522(h)

and 522(g) to avoid the transfer of their home pursuant to Section 548. *See*

*Johnson*, 449 B.R. at 12 (delineating four elements of standing under 522(h) and

522(g) in avoidance actions). Ontario County does not contest that the Hamptons

meet the first three standing requirements. Contrary to Ontario County's assertion,

the Hamptons also meet the fourth standing requirement to have an applicable

property exemption. The federal homestead exemption, which the Hamptons

claimed, is available in fraudulent conveyance proceedings under Section 548.

Neither *Johnson* nor any other case cited by the County holds otherwise.

Section 522(h) provides basic rights to the debtor under bankruptcy law. *In
re McKeever*, 132 B.R. 996, 1001 (Bankr. N.D. Ill. 1991)(noting that under 522(h)

"it is necessary" to allow the debtor the power to pursue avoidance actions in order

to protect his exemptions).

Moreover, courts across the country have considered debtors' standing

under Section 522(h) to pursue fraudulent conveyance actions after *in rem* tax

foreclosures, and these courts have made it clear that debtors do have standing to

pursue actions under Section 548 to recover homes lost to tax foreclosure.

*Warehouse at Van Buren St.*, 496 B.R. at 280-81; *In re Martyak,* 432 B.R. 25, 31-

33 (Bankr. N.D.N.Y. 2010); *In re Martin*, 2014 WL 7011042 (Bankr.E.D.Wis.

2014); *Matter of Varquez*, 502 B.R. at 190; *In re McKeever,* 132 B.R. at 1000-03.

## **CONCLUSION**

For the foregoing reasons, Plaintiff-Appellants Brenda and Joseph Hampton respectfully request that this Court reverse the Bankruptcy Court's Decision to grant Ontario County's motion to dismiss, and remand this case to the Bankruptcy Court for further proceedings.

Dated:      July 2, 2018
             Geneva, New York

                                  Legal Assistance of Western New York, Inc.
                                  Counsel for the Plaintiffs-Appellants
                                  Brenda Hampton and Joseph Hampton

                                  By:
                                  s/ Kari A. Talbott_____
                                  Kari A. Talbott, Esq.
                                  361 S. Main Street
                                  Geneva, New York 14456
                                  Tel: (315) 781-1465
                                  Fax: (315) 781-2565
                                  ktalbott@lawny.org

## CERTIFICATE OF COMPLIANCE WITH RULE 8015

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

The undersigned counsel of record hereby certifies that this computer-generated brief contains about 6802 words in compliance with the type-volume limitations contained in Rule 8015. As the basis for making this certification, I have relied upon the word count of the word processing system used to prepare it.

The brief was prepared using the proportionally spaced typeface using Microsoft Office Word 2010 in "Times New Roman" with 14 point type, in compliance with Fed. R. Bank. P. Rule 8015(a)(6).

Dated: Geneva, New York
     July 2, 2018             /s/ Kari Talbott

                                 _____
                                   KARI TALBOTT